# Commonwealth ex rel. Attorney General *versus* Dumbauld and Roberts.

1. Judges and associate judges of the Common Pleas are " officers of the Commonwealth whose jurisdiction extends over the state," within the meaning of art. III., sect. 5, of the Constitution. The Supreme Court has therefore by virtue of said section of the Constitution original jurisdiction to issue writs of quo warranto to associate judges of the Common Pleas.

2. Counties having forty thousand inhabitants are by art V., sect. 5, of the Constitution entitled to three privileges. They are, 1. The right to be a separate judicial district; 2. The right to have a resident law judge; and 3. The right not to have associate judges.

3. When by virtue of the same section, counties containing less than forty thousand inhabitants, are attached to those containing such numbers, they are entitled, 1. To have associate judges resident in the county; 2. To have the president judge of the county to which they are attached preside in their courts.

4. Such an attachment of one county to another, cannot take away the constitutional right of the county containing forty thousand inhabitants not to have associate judges.

5. Whether in such case, the voters of the attached county may under the terms of art V., sect. 5, of the Constitution, vote at the election for the president judge, who is to preside in their courts, not determined.

February 25th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. (Re-argument.)

In the Supreme Court of Pennsylvania: Of October and November Term 1880, No. 308.

Quo warranto, issued by the Supreme Court at the relation of Henry W. Palmer, attorney-general, commanding the sheriff of Fayette county to summon David W. C. Dumbauld and Griffith Roberts to appear and show by what authority they, or either of them, claim to exercise the office of associate judge in and for the county of Fayette. The case was heard on demurrer to respondent's return to said writ. It was first argued on November 20th 1880, at Pittsburgh, and the court, in an opinion by Mr. Justice

[Commonwealth v. Dumbauld.]

MERCUR, filed at Philadelphia, January 3d 1881, dismissed the writ. SHARSWOOD, C. J., having been absent at the time of the argument, and TRUNKEY and STERRETT, JJ., having dissented from the opinion and judgment of the court, a ·re-argument was ordered, on application of the attorney-general, and the case was again heard February 25th 1881.

The several facts and averments set forth in the suggestion and return are recited at length in the original opinion of this court, filed January 3d 1881, by Mr. Justice MERCUR, which opinion was as follows :

This writ of quo warranto was issued on information and suggestion of the attorney-general that said defendants were elected associate judges in and for the county of Fayette, at a general election held in said county on the first Tuesday of November 1876 ; that afterwards, on the 8th of December 1876, they were commissioned as associate judges in and for said county, to have ·and to hold the said office, and to exercise the power thereof, by the governor of Pennsylvania, for a period of five years, from the first Monday of January 1877 ; that they did thereupon assume the duties of the said office, and take upon themselves to exercise all the rights, powers and privileges thereof, and have so continued to do ever since ; that the fifth section of the fifth article of the Constitution of this Commonwealth provides that ' whenever a county shall contain forty thousand inhabitants, it shall constitute a separate judicial district,' and that ' the office of associate judge not learned in the law is abolished in counties forming separate districts ;' that in April 1874, the said county of Fayette contained forty thousand inhabitants, whereupon the legislature of said Commonwealth, on the 9th day of April 1874, enacted a law that the said county of Fayette should be a separate judicial district ; that the said county did, in November 1876, and still does, contain forty thousand inhabitants ; that the said defendants are not learned in the law, and that, therefore, they do usurp, intrude into, and unlawfully hold and exercise the said office of associate judges.

On the return day of the writ, the defendants pleaded that the action and cause of action were not within the jurisdiction of this court, wherefore they prayed judgment, &c. This plea was overruled *pro forma*, and the defendants directed to answer ; whereupon for answer thereto they say, they admit what is alleged in the suggestion filed as to their election, commission and service as associate judges in and for the county of Fayette, and they also admit that in April 1874, Fayette county had a population of over forty thousand inhabitants ; but they deny that the legislature of Pennsylvania, on the 9th of April 1874, enacted a law that the said county of Fayette should be a separate judicial district. And they aver that the legislature, by the act aforesaid, did enact that the Fourteenth Judicial District of the Commonwealth should be composed of ' the county of Fayette, to which the county of

[Commonwealth v. Dumbauld.]

Greene is hereby attached,' and they aver that the fourteenth judicial district is composed of the counties of Fayette and Greene, and deny that the office of associate judge not learned in the law was abolished in the said county of Fayette by the fifth section of the fifth article of the Constitution of Pennsylvania. They therefore deny that they usurp, have intruded into, or unlawfully hold and exercise said office. To this answer the Commonwealth demurred.

Two important constitutional questions are thus presented for consideration. They arise for the first time under the Constitution of 1874. One relates to our power to issue the writ of quo warranto against the defendants; the other to their right to the office.

We will first consider the question of jurisdiction. Art. V., sect. 3, declares the jurisdiction of the Supreme Court shall extend over the state, and the judges thereof shall have original jurisdiction * * * " of quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the state." Thus the original jurisdiction of this court in cases of quo warranto is limited to the class of officers named. It will be observed the language does not declare that those over whom jurisdiction is given shall be " state officers," but those " whose jurisdiction extends over the state."

Although judges are elected within a county or a district, that fact does not make them county officers. They receive their compensation from the state. They are subject to impeachment by the legislature, or on the address of two-thirds of each house, may be removed by the governor. Where the court is composed of a president judge and two associate judges, any two of them con- stitute a quorum. These two may be the associate judges in every case except when they compose a court of Oyer and Terminer, then the president must be one. In the exercise of the general juris- diction given to the court, the president and his associates, as a general rule, are put on a footing of equality as to their powers and duties, whenever two of them act together. While thus sitting they are on the same constitutional footing, and when acting individually their powers are co-extensive within the limits of their jurisdiction: Leib v. Commonwealth, 9 Watts 200. It was therefore expressly held in this case, that the Court of Common Pleas of each county is a state court, and the office of an associate judge is a state office. It is true that case was decided under the Constitution of 1838, yet there is nothing in the present Constitution changing the legal status of an associate judge not learned in the law; still further, although elected in and for a county or district, the judges constitute a court which, for many purposes, has jurisdiction " over the state." Thus they may issue subpoenas for witnesses in any part of the state, and attachments to compel the attendance thereof. So under section 3 of the Act

of 13th June 1836, Pamph. L. 572, and its supplement of the Act of 4th March 1862, sec. 1, Pamph. L. 79, they may send their process into any county of the state, and the sheriff of their county to execute it in any action for the recovery of damages, for a trespass or nuisance committed on real estate by a non-resident of the county wherein such real estate is situated. Under section 1 of the Act of 24th April 1857, Pamph. L. 318, in certain cases against an insurance company, the court of the county in which the property insured shall be located, may direct its process to the sheriff of any county in the Commonwealth, and it is made his duty to execute it. It follows that each judge of a Court of Common Pleas is an officer of the Commonwealth whose jurisdiction extends over the state. Neither the Constitution nor any Act of Assembly authorizes a Court of Common Pleas to inquire, by writ of quo warranto, into the title of an associate judge. As we have shown, this power is expressly given by the Constitution to the Supreme Court. We therefore committed no error in overruling the plea to our jurisdiction.

The remaining question is, the validity of the defendant's title to the office. Although Art. V., sect. 5 of the Constitution declares "whenever a county shall contain forty thousand inhabitants, it shall constitute a separate judicial district." Yet that provision does not execute itself so as to establish a separate district whenever a county attains that number; but merely declares the basis on which, at a proper time and in a proper manner, judicial districts may be created by the legislature : Commonwealth ex rel. Chase *v.* Harding et al., 6 Norris 343. To hold otherwise would work irreparable mischief and confusion, and be substantially impracticable to carry into effect. The same section declares the office of associate judges not learned in the law, "is abolished in counties forming separate districts." Giving due effect to each part of the section, and making them harmonize, it is manifest that associate judges not learned in the law are abolished in those counties only which the legislature has constituted separate districts. This brings us to a consideration of the question whether, under the Act of 9th April 1874, the county of Fayette does form a separate district, or whether the counties of Fayette and Greene together form a district ? The answer to this depends on the effect to be given to the language that the Fourteenth Judicial District shall be composed "of the county of Fayette, to which the county of Greene is hereby attached."

The Constitution is not to receive a technical construction, like a common-law instrument, nor like an act of the legislature. It must be so interpreted as to give effect to the great principles of government which it is intended to secure : Commonwealth *v.* Clark, 7 W. & S. 127. No such prominence should be given to any one part, as to prevent giving reasonable effect to every other

[Commonwealth v. Dumbauld.]

part, or to destroy the harmonious purpose of the whole. It gives to the legislature power to make one county a separate judicial district, and to put any number of counties not exceeding four into one district. The question, therefore, is not whether the legislature had power to constitute Fayette county a separate district; but whether that power has been so exercised?

It should never be assumed that any act of the legislature was intended to be in conflict with the Constitution, or that it would be violative of any of its provisions. If a statute is alleged to be unconstitutional, the burden of establishing the truth of the allegation is on him who alleges it. While in considering the validity of a legislative act we may not look beyond the Constitution (Sharpless v. Philadelphia, 9 Harris 147), yet in arriving at the intention of the legislature we may consider the mischief that would arise from giving too literal effect to the language of the act.

Let us, then, briefly consider the condition of the people of Greene county. That county is either within or without the fourteenth district. If without, what is its position? It is not a part of any other district. The Constitution gives to the people a right to vote in the election of their judges. Have the people of Greene county such right? If so, is it to vote for a judge in a district of which their county forms a part, or is it to vote for a judge in another district? If the view of the plaintiff be correct, the latter is the only course open to a citizen of the county of Greene. Again, for whom must the elector vote? Must he be a resident of Fayette, or may he be a resident of Greene? If a resident of the latter, must he take up his residence in Fayette to comply with the requirements of the Constitution? Suppose, in case of several candidates, the vote cast in Greene should elect the president judge, is that vote competent and valid to elect him, yet its soil legally disqualified from giving him a residence? These and other objections which might be stated show the difficulties in adopting the view of the plaintiff. The whole spirit of the Constitution and of the Acts of Assembly is that the people of each county shall be permitted to vote for a president judge, and that they shall vote in the election of one for their district only. The doctrine that a county can be made a kind of territorial appendage to a judicial district, and the people therein shorn of their rights, finds no warrant in the Constitution.

Although the language of the Act of 9th April 1874 may not be aptly chosen, yet it manifestly intends to declare that the county of Greene is, for judicial purposes, attached to the same district with Fayette, and that the two counties thus united form the fourteenth district. It follows that the county of Fayette does not constitute a separate judicial district, and the

[Commonwealth v. Dumbauld.]

defendants do lawfully hold and exercise the offices of associate judges therein.

Writ dismissed

TRUNKEY and STERRETT, JJ., dissented.

Art. V., sect. 5, of the Constitution of 1874, is as follows:

" Whenever a county shall contain forty thousand inhabitants, it shall constitute a separate judicial district, and shall elect one judge learned in the law, and the General Assembly shall provide for additional judges as the business of the said district may require. Counties containing a population less than is sufficient to constitute separate districts shall be formed into convenient single districts, or, if necessary, may be attached to contiguous districts, as the General Assembly may provide. The office of associate judge not learned in the law is abolished in counties forming separate districts, but the several associate judges in office when this Constitution shall be adopted shall serve for their unexpired terms."

Sects. 13 and 14 of the schedule are as follows:

Sect. 13. " The General Assembly shall, at the next session after the adoption of this Constitution, designate the several judicial districts as required by this Constitution. The judges in commission, when such designation shall be made, shall continue, during their unexpired terms, judges of the new districts in which they reside; but when there shall be two judges residing in the same district, the president judge shall elect to which district he shall be assigned, and the additional law judge shall be assigned to the other district."

Sect. 14. " The General Assembly shall, at the next succeeding session after each decennial census, and not .oftener, designate the several judicial districts as required by this Constitution."

The Act of April 9th 1874 (Pamph. L. 54, Purd. Dig. 1835), provides as follows:

" The judicial districts of the Commonwealth shall be numbered, composed and designated as follows: * * * The fourteenth distict of the county of Fayette, to which the county of Greene is hereby attached."

*Henry W. Palmer*, Attorney-General, and *C. R. Buckalew* (with them *Edward Campbell*), for the Commonwealth.—Art. V., sect. 5, of the Constitution, provides for two classes of counties, (1.) Those containing forty thousand inhabitants and over. (2.) Those containing less than forty thousand inhabitants. It declares that each county in the first class " shall constitute a separate judicial district," and that counties in the second class " shall be formed into *convenient* single districts, or, *if necessary*, may be *attached to contiguous districts*, as the General Assembly may provide." It further declares that counties of the first class " shall elect one

[Commonwealth *v.* Dumbauld.]

judge learned in the law," and that "the office of associate judge not learned in the law *is abolished in counties forming separate districts*," with a proviso that the associate judges in office at the time of the adoption of the Constitution should serve for their unexpired terms. Sects. 13 and 14 of the Schedule, fixed the times when the legislature should designate the several judicial districts, viz.: for the first time, at the next session after the adoption of the Constitution; and subsequently at the next succeeding session after each decennial census.

The right of the legislature in the premises is thus restricted to the ministerial act of designating districts. It is the clear constitutional right of a county containing forty thousand inhabitants, (1.) To be a separate district; (2.) To have a single law judge; (3.) Not to have associate judges not learned in the law.

It is an admitted fact in this case that Fayette county, at the time of the passage of the Apportionment Act of 1874, contained more than forty thousand inhabitants. The legislature by that act designated the fourteenth district as consisting "of the county of Fayette, to which the county of Greene is hereby attached."

The question for construction here is as to the meaning and effect of the expression in the Constitution "attached to contiguous districts." This provision was doubtless inserted because experience had shown that there might be some counties of a less population than forty thousand, which, by reason of location or other cause, could not conveniently be included in any single district, and the legislature, in the Act of 1874, found this to be the case, and availed themselves of the permision to "attach" counties in three cases. The position of an attached county is exceptional and anomalous, but neither by the letter nor the spirit of the Constitution, can the attaching of a small county to a large one affect the clear right of the latter to be a separate district, and to have no associate judges. In construing the *letter* of the Constitution, ordinary words must be taken in their popular acceptation: Monongahela Nav. Co *v.* Coons, 6 W. & S. 114. To "attach" does not make the thing attached part of the thing to which it is attached. To ascertain the *spirit* and *intent*, we must look to the mischief formerly existing. The debates in the convention show that the effort and object of the counties was to secure a resident law judge, and to get rid of associate judges not learned in the law—which office exists in Pennsylvania only by implication, not by express creation. The convention, after much debate, fixed on a population of forty thousand, as the basis of granting their wish: 8 Conv. Deb. (1873) 374.

The intention, significance and force of the word "designate" in sects. 13 and 14 of the schedule cannot be mistaken. It is here a general term, including the pointing out and naming or numbering the constitutional districts, as well as those to be made or formed

[Commonwealth *v*. Dumbauld.]

by the legislature. The constitutional districts are defined and fixed by the first division, fifth section of the judiciary article, and power is conferred upon the legislature by the second division of that section to make *other* districts and to attach counties. These sections of the schedule, therefore, confer no power upon the legislature to make districts, but fix the times when as to some the power shall be exerted, and when as to all they shall be arranged, numbered and proclaimed.

The sole, exclusive condition on which a county by right assumes position as *a separate district* is its possession of at least forty thousand inhabitants at a decennial census. Then, the legislature must designate it as a district, and make due provision for its enjoyment of the rights conferred upon it by the Constitution. It is not mere territorial composition, but constitutional character that defines a separate district, and a county with adequate numbers must become such and retain its character, whether a small county shall be attached to it or not. To say that the mere attachment of a county (to secure necessary judicial service for the attached county) will destroy its privileges and character as a separate district, is to beg the very point in controversy without proof and without reason. No such result is required by the attachment clause of the Constitution, and the judge or judges of the separate district may well render all proper judicial service to the attached county without residing within it. Besides, the *attached* county will retain its associate judges.

The contemporaneous construction of the Constitution by the legislature, the courts and the people is entitled to great weight. The first section of the Act of 1874 declares that the districts " shall be numbered, composed and designated as follows." The constitutional and statutory districts are arranged by numbers, and the three exceptional counties of Lebanon, Greene and Fulton are attached respectively to the separate contiguous districts of Dauphin, Fayette and Franklin. Under a special provision in the act, Lebanon county is given an additional law judge besides the associate judges; but the bench, the bar and the people of Dauphin and Franklin counties have for six years acted upon the construction that the office of associate judges was abolished in those counties.

[SHARSWOOD, C. J.—Do the attached counties have the right to vote for president judge?]

That question does not necessarily arise in this proceeding. The question is, as to the right of Fayette county, not the rights or wrongs of Greene county, but it does not offer much difficulty. There is no reason why the inhabitants of the attached county should not vote for a president judge. At an election held in the thirty-ninth district, consisting " of the county of Franklin to

[Commonwealth *v.* Dumbauld.]

which Fulton is attached," the vote in Franklin county was, curiously enough, a tie, and the inhabitants of Fulton elected their candidate as president judge, who was obliged to remove his residence to Franklin county. Greene county may be considered attached to Fayette *for judicial purposes only*, and for all other purposes may remain apart—in the same manner as lands in one township may be attached to another township "for educational purposes" only, under the Acts of April 8th and 13th 1867, which acts have been declared constitutional and so construed by this court in Colvin *v.* Beaver, 9 W. N. C. 396. But even if it be held that Greene county has no voice in the election of a president judge, the hardship is no greater than has frequently been suffered when, upon the erection of new judicial districts by the legislature, or by transferring a county from one district to another, the courts of that county have been presided over for years by a judge not voted for by its electors.

The effect of adhering to the construction adopted in the opinion heretofore filed, it is respectfully submitted, is virtually to repeal a primary and sufficiently expressed provision of the Constitution in favor of a large county, in order to give a supposed effect to a minor and ambiguously expressed intent in favor of a small county. And the practical results may be very serious; the president judge of Dauphin county, sitting alone, has for several years held courts of Oyer and Terminer, Quarter Sessions and Common Pleas, and under that practice many convicts are now serving terms in prison, and at least one man has been convicted, sentenced and hung for murder. Unless the position we contend for is correct, such trials were *coram non judice*, and the prisoners would be entitled to be liberated on habeas corpus.

(No counsel appeared *contra*, and no paper-book was presented.)

Mr. Justice PAXSON delivered the opinion of the court, March 21st 1881.

This was a writ of quo warranto, issued at the relation of the attorney-general, requiring the defendants to show by what authority they hold and exercise the office of associate judges of Fayette county.

It appears, by the suggestion filed, that Fayette county has a population of forty thousand inhabitants; that by the Act of 9th April 1874, Pamph. L. 54, it was designated as the Fourteenth Judicial District, "to which the county of Greene is hereby attached;" that the associate judges of Fayette county, in office at the time of the adoption of the Constitution, remained in office until the expiration of their respective terms; that the defendants were elected after such expiration, and have continued in office since

[Commonwealth *v.* Dumbauld.]

that time under the belief that Fayette county is still entitled to associate judges.

We are met at the threshold of the case by a denial of our jurisdiction.    Sect. 3 of art. V. of the Constitution declares the jurisdiction of the Supreme Court shall extend over the state, and the judges thereof shall have original jurisdiction in cases * * of "quo warranto, as to all officers of the Commonwealth whose jurisdiction extends over the state."    It is objected that the jurisdiction of a judge of the Common Pleas does not extend over the state, but is confined to his judicial district, from which it is argued that he is not "an officer of the Commonwealth" whose right to hold his office can be inquired into by this court upon a writ of quo warranto.    If this position be sound, there would be no remedy in such cases, as neither the Constitution nor any Act of Assembly confers such jurisdiction upon the Courts of Common Pleas, and a person who had intruded himself into the office of president or associate judge of such court could hold the office so usurped indefinitely.    We are not driven to this unfortunate position, as we regard the question of our jurisdiction as free from difficulty.    That judges of the Common Pleas are state officers is not denied: Leib *v.* Commonwealth, 9 Watts 200.    While their jurisdiction for many purposes is confined to their respective judicial districts, it is equally true that for some purposes it extends over the state.    Witnesses may be subpœnaed in any portion of the state, and their attendance compelled by attachment in any county of the state by the Court of Common Pleas of such county. In many instances, original process may issue from such courts to other counties throughout the state.    The 3d section of the Act of 13th June 1836, Pamph. L. 572, the Act of 4th March 1862, Id. 79, and the Act of 24th April 1857, Id. 318, are cited as illustrations.    Many similar acts might be referred to were it necessary.    We need not pursue this branch of the case further.    It is too plain for argument.    We are of opinion that a judge of the Court of Common Pleas is an officer whose jurisdiction extends over the state, within the meaning of the 3d section of the 5th article of the Constitution.    It follows, that this court has jurisdiction to inquire, upon quo warranto, by what right the defendants hold the offices which they respectively claim.

We pass now to the main question in the case.    Its solution must depend chiefly upon the construction which should be placed upon the 5th section of the 5th article (Judiciary) of the Constitution.    The language of said section is as follows: "Whenever a county shall contain forty thousand inhabitants, it shall constitute a separate judicial district, and shall select one judge, learned in the law, and the General Assembly shall provide for additional judges as the business of the said districts may require.    Counties . containing a population less than is sufficient to constitute separate

[Commonwealth v. Dumbauld.]

districts shall be formed into convenient single districts, or, if necessary, may be attached to contiguous districts, as the General Assembly may provide.    The office of associate judge not learned in the law is abolished in counties forming separate districts; but the several associate judges in office when this Constitution shall be adopted shall serve for their unexpired terms."

The Act of 1874, to which reference has been made, was passed to give effect to this constitutional provision, and designates the different judicial districts throughout the state.

It is clearly the right of Fayette county, having a population of forty thousand inhabitants, to be a separate judicial district. Hence it was entirely proper for the legislature to designate it as the fourteenth district.

Counties having forty thousand inhabitants are entitled to three privileges under the 5th article.    They are: 1. The right to be a separate judicial district; 2. The right to have a resident law judge; and 3. The right not to have associate judges.    As these rights rest upon the fundamental law, it is not in the power of the legislature to take them away.    The designation in the Act of 1874 of Fayette county as the fourteenth judicial district is the equivalent of declaring it a separate district.    To hold otherwise would convict the legislature of a wilful violation of the Constitution.

It was urged, however, that by attaching Greene county to Fayette, under the provision of the 5th article, Fayette lost its distinctive character as a separate district, and that Greene became a part of the district.    This proposition cannot be sustained without writing something into the Constitution that is not there.    It does not say that counties with forty thousand inhabitants shall be separate judicial districts, excepting where a county with a less population is attached thereto.    There is nothing in the language of the Constitution to indicate that Fayette county loses any of its rights as a separate district by having Greene attached.

The word "attached" in the 5th article, and in the Act of 1874, must be understood according to its popular meaning.    It was well said in Monongahela Navigation Company v. Coons, 6 W. & S. 114, that constitutions are for the million, not for the mere inspection of lawyers, and are expressed in terms that are most familiar to them, that they may discern their rights and duties.    What would the citizen of average intelligence understand by the word attach ?    Precisely what the lexicographers define it to mean, " to tie or fasten, to bind; as to fasten one substance to another by a string or glue."— *Webster*.    Surely he would never dream that when one thing is attached to another, the thing attached became a part of the thing to which it is attached.    You may attach a chain to a watch, but it does not thereby become a watch, nor any part thereof.    Nor does a small county attached to a separate judi-

[Commonwealth *v.* Dumbauld.]

cial district become a part of such district by virtue of such attachment. To hold that it does, would require us to give a forced and unreasonable construction to the word attached, as well as to disregard the plain mandate of the Constitution, which declares that counties with a population of forty thousand inhabitants *shall* constitute a separate judicial district.

The Constitution having in language too clear to be misunderstood defined the rights of Fayette county as a separate district, I will consider for a moment the rights and position of Greene as an attached county. Among them are, 1st. The right to have associate judges resident in the county; and, 2d. The right to have the president judge of Fayette to preside in her courts, and to attend to all such business as requires his action. For such purposes Greene is in the same position as if she were one of the counties of a single district.

In such case, however, it might fall to her lot, to have a resident president judge, which can never be the case while attached to Fayette. If there is anything clear in the Constitution, it is that the mere attachment of Greene to Fayette does not change any of the rights of the latter county.

I grant that the position of an attached county is anomalous. It was probably intended to be so. It would have been very easy for the framers of the Constitution to have provided in that instrument that such a county should be a part of the judicial district to which it should be attached. But they carefully refrained from doing so, and, we must presume, for sufficient reasons. Its position, at most, is temporary. It may become a separate district by increase of population, or may be made a part of a single district; and I have no doubt this guarded language was used in the Constitution to prevent what has just occurred here, viz., an attempt on the part of associate judges to hold their offices in separate districts where, by reason of there being a resident law judge, they are not needed. It is impossible to read the Constitution, or the debates of the convention which framed it, without coming to the conclusion it was intended to abolish the office of associate judge in all counties where a president judge is obliged to reside—that is, in all "counties forming separate districts;" and in attaching a county to a separate district the separate character of the district is presumed, *so far as it concerns the office of associate judges not learned in the law.* Further than this it is not necessary for us to go. It may be that in some sense and for some purposes Greene county may be a portion of the Fourteenth District. It is certainly a portion of the territory over which the judge of Fayette is required to preside, and in this sense the words "district" and "territory" may perhaps be considered as convertible terms. But it cannot be regarded as a part of the district in the sense of taking from Fayette county any of its rights as a separate district; it is

[Commonwealth *v.* Dumbauld.]

not so written in the Constitution, nor do we see any good reason why we should give that instrument such a construction.

We have seen that Greene as an attached county has all the rights necessary for the holding of her courts and the proper administration of the law. It is said, however, that the construction we have placed upon the Constitution denies to her people the right to vote for president judge: this does not necessarily follow. The 15th section of the 5th article provides, "All judges learned in the law, except the judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are *to preside.* Speaking for myself, it may possibly be that, in favor of the right of suffrage and for election purposes, the word "districts" in this section may be construed to mean territory, so that in the case of an election for president judge of the Fourteenth District, the voters of the entire territory over which he is to preside may vote at such election. This, however, is a mere suggestion, not even an opinion of my own. No such question is before us, nor can it be decided in this proceeding. Any attempt to do so would embarass us in the future when such a case is brought before us, if it should be.

Even if there be a *casus omissus* in the Constitution in this respect, it would be no reason why we should deprive Fayette county of rights clearly given by the fundamental law. We can neither amend the Constitution or make the law. If any remedy is needed, we leave it to the legislative department of the government where it properly belongs.

This evil, if it exists, is not serious nor of a permanent character. It has often happened in the past that in the erection of new judicial districts, or by transferring a county from one district to another, the courts of a county have been presided over for years by a judge who was not voted for by its electors. And such instances may occur in the future under apportionments under the new constitution. Such slight imperfection in the working of that instrument in isolated cases is no good reason for interfering with a general system which, as a whole, is commendable and may be found useful.

And now, March 21st 1881, after hearing and upon due consideration, judgment is entered for the Commonwealth; and it is further ordered and adjudged by the court that the said David W. C. Dumbauld and Griffith Roberts be and they are hereby respectively ousted from the office of associate judge of the Court of Common Pleas of Fayette county, and from the franchises, fees and emoluments thereof, and that they pay the costs of this proceeding.

1 OUTERBRIDGE—20

[Commonwealth *v.* Dumbauld.]

Mr. Justice MERCUR, dissenting, delivered the following opinion, in which GORDON and GREEN, JJ., concurred:

Less than three months ago, after argument and ample time for consideration, we decided this case in favor of the defendants. Now, after a re-argument on the part of the plaintiff only, and without any substantial reasons not presented on the former argument, the judgment then entered is to be reversed. In this I cannot concur. Nothing less than clear error in the former judgment justifies the present judgment. This reversal is mainly based on that portion of article V., sect. 5, of the Constitution of 1874, which declares "whenever a county shall contain forty thousand inhabitants it shall constitute a separate judicial district. * * * Counties containing a population less than is sufficient to constitute separate districts shall be formed into convenient single districts, or, if necessary, may be attached to contiguous districts, as the General Assembly may provide. The office of associate judge not learned in the law is abolished in counties forming separate districts."

As the clause relating to forty thousand inhabitants does not execute itself, but requires legislative action to give it effect (Com. ex rel. Chase *v.* Harding, 6 Norris 343), and other parts of the Constitution relate to the same general subject-matter, no one should be interpreted by itself alone, but all should be made to harmonize so as to give due effect to the whole Constitution. It must be so interpreted as to carry out the great principles on which our government is based.

Section 15 of the same article declares " all judges required to be learned in the law, except judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are to preside." It is conceded that one president judge presides in the counties of Fayette and Greene. It follows that he is the president judge in each county, and the writs issued in each are tested in his name. Thus, in fact, the two counties constitute the district in which he presides. Then, in the language of the Constitution, he " shall be elected by the qualified electors" of that district.

Section 19 requires that judges, " during their continuance in office, shall reside within the districts for which they shall be respectively elected."

Section 26 declares " all laws relating to courts shall be general and of uniform operation."

The right of every male citizen of the Commonwealth, twenty-one years of age, to vote at all elections, under limited qualifications, is expressly declared in art. VIII., sect. 1. This right of suffrage thus distinctly affirmed to exist in the great body of the people cannot be taken from them as long as the present Constitution stands, and it is not to be held subordinate to mere matters of

[Commonwealth *v.* Dumbauld.]

convenience.  It follows that the qualified electors of the county of Greene have a right to vote at every election of a president judge to preside in that county.  In case the vote in Fayette county should be divided between several candidates, and the whole vote of Greene county be cast for another candidate, whereby the latter received a plurality of all the votes cast, can it be contended that he is not thereby duly elected?  It cannot be without ignoring one of the highly valued rights of the people. After a judge shall be elected to preside in the two counties, it seems to me too clear for argument to try to prove he may reside in either county of the district, or that he may not at will change his residence from one county to another.  He may reside in Greene every summer and in Fayette every winter.  If the view is to prevail that the latter county shall be deprived of associate judges, the people thereof must at times suffer great inconveniences, at least when the judge shall reside in Greene.

It is claimed, however, that the Constitution declares a county or counties having a population insufficient to form a separate district may be attached to contiguous districts, and as Greene is attached to Fayette, the latter still remains a separate district.  It is true the Constitution does permit a county to be attached to a contiguous district, yet there it stops.  It does not profess to declare its legal status, nor the status of the citizens of the county thus attached.  It certainly is not a forced presumption to say, that, when the people adopted the Constitution, they understood, whenever a county was "attached" to an existing district, it became a part of the district.

The very idea of territorial attachment is, that the two thus united become parts of one whole.  It is but another word for annexation.  Unless otherwise provided by the terms of annexation, it becomes an integral part of the enlarged territory.

The denial of associate judges to the county of Fayette is a distinct affirmation that in one county, in which the president judge presides, he constitutes the whole court.  He may there hold a court of oyer and terminer, and perform all the duties and exercise all the power that he and associate judges not learned in the law jointly might do.  In the county of Greene, where he also presides, it is admitted he has no such power.  This is manifestly contrary to the whole spirit of the Constitution and the Act of Assembly creating the district.  The idea that the presiding judge has so much less power in one county in his district than in another, finds no warrant in the Constitution.  It is conceded that this ground is wholly untenable, where the legislature has in clear and express terms declared that two counties shall form a district.

It is therefore contended that the legislature may make this discrimination, and make the clause applicable to courts of the same grade of unequal operation, but this would seem to come in direct

[Commonwealth *v.* Dumbauld.]

conflict with section 26, which says: "All laws relating to courts shall be general and of uniform operation." The construction contended for would be to recognise a law not general and not of uniform application.

This is not the case of a transfer of one county to a previously existing judicial district, for which the Constitution intended to provide. It is the formation of a new district by one and the same Act of Assembly, and in one line thereof.

After judges were made elective in Pennsylvania, a question as to the power of the legislature to transfer a county to another district, and thereby impose on the people thereof a judge in whose election they had no voice, was somewhat mooted. To remove this doubt, and to bridge over the time intervening prior to the next election, this power to attach was expressly given. It cannot be that there was any intention to permanently take from the people of any one county substantial rights and powers enjoyed by the people of any other county. It is clearly wrong to say the people of Fayette county have a right to be deprived of associate judges. On the contrary, they have the right to enjoy all the conveniences resulting from having such judges. They expressed such desire by electing these judges. The governor duly commissioned them. It cannot be presumed that he did so contrary to the advice of the then attorney-general. Thus the action of the people of Fayette county had the sanction of the executive department.

Notwithstanding the words of the Constitution, that a county containing a population of forty thousand shall constitute a separate district, yet an act of the legislature is necessary to make it a district, and to set its machinery in motion. It is giving to that clause an undue effect when it is thus made to defeat other parts of the Constitution relating to the same subject-matter, and thus thwart the clear intent of the legislature in uniting the two counties under one president judge. To reach any other conclusion is to assume it intended to violate a cardinal right of the people declared in the Constitution. The other view makes the act harmonize with the different parts of the Constitution, so as to give a reasonable and practical effect to all of them.

Justices GORDON and GREEN concur in this opinion