Commonwealth ex rel. Baldrige, Attorney General, *v.* Glass.

292

*Jas. Gay Gordon,* for Commonwealth.

*John Robert Jones,* for respondent.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 17, 1929:

Both the Honorable LEOPOLD C. GLASS and the Honorable CHARLES L. BROWN claim to be president judge of the Municipal Court of Philadelphia, and to have the right to perform the functions pertaining to that office. This creates a situation which calls for immediate solution, and, on the application of the Attorney General of the Commonwealth, we have taken original jurisdiction.

Section 3 of article V of our state Constitution provides that "the Supreme Court shall have original jurisdiction in cases of......quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the state." In Com. v. Dumbauld, 97 Pa. 293, 295, a writ of quo warranto was issued by this court at the instance of the attorney general, commanding two defendants to show by what authority they, or either of them, claimed to exercise the office of associate judge, "not

learned in the law," in Fayette County. In passing on the question of our right to take original jurisdiction, we there said: "It will be observed that the language [of the Constitution] does not declare that those over whom jurisdiction is given shall be 'state officers' but those 'whose jurisdiction extends over the state.' Although judges are elected within a county or a district, that fact does not make them county officers. They receive their compensation from the State. They are subject to impeachment by the legislature, or, on the address of two-thirds of each house, may be removed by the governor...... They may issue subpœnas for witnesses in any part of the State, and attachments to compel the attendance thereof; so, [under several acts of assembly named in the opinion] they may send their process into any county in the state. It follows that each judge......is an officer of the Commonwealth whose jurisdiction extends over the state." See also Leib v. Com., 9 Watts 200, 218.

The Act of July 12, 1913, P. L. 711, creating the Municipal Court of Philadelphia, provides, inter alia, by section 10, that "Said court......shall have jurisdiction in all civil actions at law and in equity where the value of the matter or thing in controversy......does not exceed [a given sum]," and that "said court shall also have jurisdiction in *any* civil cases transferred to it by order of the majority of the judges of any Court of Common Pleas of Philadelphia County." By section 11, the municipal court is given considerable criminal and other general jurisdiction. In Gerlach v. Moore, 243 Pa. 603, we held the municipal court to be legally constituted under the organic law of Pennsylvania as an integral part of the judicial system of the State. As with other courts, the subpœnas, and processes generally, issued by this tribunal, go out in the name of its president judge, and, when the title to that office is brought into question, we have original jurisdiction by quo warranto to determine the point involved. In the words of Com. v. Dum-

bauld, supra, 296, "neither the Constitution nor any act of assembly authorizes the courts of common pleas to inquire by quo warranto into the title of [one claiming to hold such office] ; this power is......given......to the Supreme Court."

The Act of 1921 provided, by paragraph 5 of section 2, that the governor should designate one of the judges of the municipal court "to be president judge," and vested power in the governor to fill vacancies occurring in that office. This was amended by the Act of June 27, 1923, P. L. 850, which provides that, "On the first Monday of January, 1924, and every five years thereafter, the judges of said court shall elect one of their number as president judge, who shall hold such office for a term of five years."

Following the Act of 1923, the judges of the municipal court, on the first Monday of January, 1924, elected the Honorable RAYMOND MACNEILLE president judge. He resigned on July 26, 1927, and the Honorable LEOPOLD C. GLASS was elected his successor. On Thursday, January 3, 1929, the Honorable JOHN E. WALSH, as secretary of the board of judges of the municipal court, notified each of the members of that tribunal that there would be a meeting of the judges on the first Monday of January, 1929, at an hour set, and that this meeting was called in compliance with the Act of June 27, 1923. The judges of the court met at the time stated in the notice. The Honorable LEOPOLD C. GLASS presided at this meeting, acting as president judge. He read from the minutes of the court a letter addressed to the Honorable Gifford Pinchot, then Governor of the Commonwealth, in which the secretary of the board of judges of the municipal court certified to the fact that the Honorable RAYMOND MACNEILLE, having resigned as president judge, because his term of office as a judge would expire on the first Monday of January, 1926, "was reëlected president judge for the term of five years, to be computed from the first Monday of January, 1926." He

then read from the minutes, a letter of resignation tendered by the Honorable RAYMOND MACNEILLE on July 26, 1927, and the recital of his, Judge GLASS'S, own election to that office. After reading these documents, the chairman of the meeting declared there was no vacancy existing in the office of president judge of the municipal court, giving as his reason that the former president judge, the Honorable RAYMOND MACNEILLE, was elected January 4, 1926, for a term of five years to be computed from January 4, 1926, and that he, Judge GLASS, was elected on July 26, 1927, as president judge, to take the place of Judge MACNEILLE; that the board of judges, having in 1926 passed on the question of election of the president judge, the action then taken was binding and no appeal could be had therefrom except to an appellate court.

It further appears, from what is alleged to be a copy of the minutes of the municipal court, attached to the petition for quo warranto, that, on a motion to adjourn, four judges voted "aye" and six "nay," but the chairman declared the meeting adjourned, and refused to reconsider his ruling; that, immediately thereafter, the Honorable LEOPOLD C. GLASS and three other judges of the court "went into a conference," and "Judge GLASS, addressing himself to [the six remaining judges] demanded that they discontinue carrying on business of the court in his office," where the general meeting had been held.

The alleged minutes then state that "judges JAMES E. GORMAN, H. GILBERT CASSIDY, CHARLES L. BROWN, EUGENE C. BONNIWELL, WILLIAM M. LEWIS, and JOHN E. WALSH, secretary of the board, without separating, arose in a body and proceeded to another room in the county courthouse......and......continued the meeting of the board of judges"; that, at this meeting, presided over by the Honorable JOHN E. WALSH, it being moved that the election of the president judge of the municipal court should be proceeded with "in compliance with the

mandate of the law as declared in the Act of General Assembly" approved June 27, 1923, P. L. 850, all six judges voted for CHARLES L. BROWN, and instructed the secretary of the board of judges to notify the governor and other proper officials that "The said Honorable CHARLES L. BROWN was elected president judge of the Municipal Court of Philadelphia for a term of five years to be computed from 7th day of January, A. D., 1929, the said date being the first Monday of January, A. D., 1929."

The prayer for quo warranto is that the writ issue "against said LEOPOLD C. GLASS to show by what authority he claims to exercise the office of president judge of the Municipal Court of Philadelphia."

The answer filed by respondent denies that the copy of the minutes attached to the petition correctly sets forth in all particulars what took place at the meeting on January 7, 1929. He avers that the notice calling the meeting, sent out by the secretary of the board of judges of the municipal court, had not been authorized or directed at any prior meeting of such judges; that the "place of regular meetings of the said board of judges was fixed to be the office of the president judge," and that the last meeting there called, prior to January 7, 1929, was duly postponed to that date "for the purpose of action on the list of appointments and such other business as may come before the court." The answer admits that respondent stated to the meeting on January 7, 1929, "that there was no vacancy in the office of president judge, as the president judge in the person of RAYMOND MACNEILLE had been elected for a term of five years on January 4, 1926, to serve until the first Monday of June, 1931,......and that on July 26, 1927, the said Judge MACNEILLE resigned as president judge, ......whereupon......LEOPOLD C. GLASS......was unanimously elected as president judge." Respondent further avers in his answer that a motion to adjourn the meeting of January 7th "was duly put by the president

judge, and, there being no dissenting vote, the motion was declared carried"; that, when this motion was declared carried, Judges KNOWLES and CRANE were heard to announce that they intended to return to their respective chambers, where they could be notified if wanted, and that Judge BONNNIWELL said to Judges BROWN, CASSIDY and GORMAN, "Well, let us go out and determine what we can do next"; that the respondent received no notice of any meeting of the judges of the court to be held on the day in question, other than the meeting at which he presided, and that this was true also of Judges KNOWLES, CRANE and BLUETT. He denies that he "went into conference with three of his colleagues apart from the remaining six judges of the Municipal Court" or that he demanded that the latter "discontinue carrying on the business of the court in his office." Finally, respondent avers that he has no knowledge of what took place at the meeting of the six judges last mentioned, and asserts that such gathering was not a meeting of the court, and, therefore, that it could not have transacted any business for the court, much less elected anyone president judge.

Thus it appears that respondent, the Honorable LEOPOLD C. GLASS, bases his claim to hold the office of president judge of the municipal court on the fact that, as he alleges, the judges of that tribunal elected the Honorable RAYMOND MACNEILLE president judge for a term of five years to be computed from January 4, 1926, and that he, LEOPOLD C. GLASS, was, on July 26, 1927, elected to succeed Judge MACNEILLE in the office of president judge. He therefore contends there was no vacancy in the office of president judge to be filled on the first Monday of January, 1929.

The weakness in the position of the respondent is that the Act of June 27, 1923, supra, expressly provides that the judges of the municipal court shall elect a president judge on the first Monday of January, 1924, and that, "every five years thereafter the judges of said court shall

elect one of their number as president judge, who shall hold such office for a term of five years." Here is a plain mandate from the legislature directing that the term of office of president judge of the municipal court shall run for five years from the first Monday of January, 1924, or, in other words, until the first Monday of January, 1929, and that, on the last mentioned date, the judges of the municipal court shall elect one of their number as president judge. No matter what may have occurred in the interim as to the election of a president judge, this mandate must be obeyed.

We have studied with interest the elaborate argument of counsel for respondent, contending that, when the Honorable RAYMOND MACNEILLE resigned as president judge, just prior to January 4, 1926, his action left no vacancy in the term of office, and, therefore, when, immediately thereafter, he was reëlected president judge, such election was for the full term of five years mentioned in the act. We note the authorities and the common law rules relied upon to sustain this position. The answer to the whole argument lies in the words of the Act of 1923, which, as before said, plainly state that, "On the 1st Monday of January, 1924, and every five years thereafter, the judges [of the Municipal Court] shall elect one of their number as president judge." No such statutory provision figured in Com. ex rel. v. Slifer, 25 Pa. 23, nor in any other of the cases cited to us; and, in the face of it, the common law rules discussed by counsel have no application.

As correctly stated in 29 Cyc. 1401, "In the absence of any constitutional or statutory provisions, power to elect or appoint to office is to be regarded as including the power to fill vacancies"; but of course, in a case like the present, this can only mean, to fill a vacancy up to the time that the legislature has expressly set for an election for a full term. In other words, as stated at page 1403, "one elected or appointed to fill a vacancy is ......, in the absence of statutory provision, presumed

to be elected or appointed for the unexpired term." As said by this court in Brooke v. Com., 86 Pa. 163, 168, "the term for which [the predecessor of respondent] was elected, as well as the term of [respondent] who filled out the unexpired portion of [that predecessor's] term," would necessarily expire at the same time: see also Com. v. King, 85 Pa. 103, 110-11. Judge PAXSON, afterwards chief justice of this court, properly stated in Com. v. Armstrong, 9 Phila. 479, 480, that "A public officer, elected or appointed for a definite term, cannot hold over upon a failure to elect or appoint his successor, unless by virtue of some law" so providing. Neither the act creating the municipal court nor its amendments make any such provision, and we find no general provision in our law covering the case. Some jurisdictions have a different rule, as shown by the citation, in respondent's brief, of Benson v. Mellor, 152 Md. 481, 486, 487; but we think the rule is correctly stated by Judge PAXSON. To hold otherwise would be bad public policy, for those having the duty put on them of filling an office at a definite time might slumber on their responsibility and allow the incumbent to occupy the office indefinitely. The public interest cannot suffer under what we conceive to be the correct rule, because, if the officer whose term expires, despite that fact, continues to perform the duties of the office until his successor is duly elected, even though his acts would not be accounted as those of a de jure officer, they could be sustained as those of a de facto officer.

While we are all of the opinion that the term of the Honorable LEOPOLD C. GLASS as president judge of the Municipal Court of Philadelphia expired on the first Monday of January, 1929, we are also of opinion that, whether the alleged minutes attached to the petition or the averments of the answer be taken as a verity, it plainly appears that there was no such election of a president judge of the court as is required by the Act of 1923. When, by that act, the legislature said that, at a

set time, "The judges of said court shall elect one of their number as president judge," it meant that the judges should meet together as a whole, or as many of them as might be "available at the time" and then and there, in a proper and formal manner, proceed to an election: Hanover Township School Directors' Case, 290 Pa. 95, 102, 105. As recently stated by us in the case just cited, "certain classes of things must be done by the court as a whole"; clearly, the election of a president judge is of that character. See also Nason v. Poor Directors, 126 Pa. 445, 458, cited by respondent. The six members of the municipal court who attempted to elect the Honorable CHARLES L. BROWN president judge of that tribunal, were acting separate and apart from the four other members of the court, without notice to the latter; irrespective of the propriety of their motives, they could not in this manner fulfill the obligation placed upon the court as a whole.

Since no issues of fact raised by either the petition or answer materially affect the controlling question in this case, as to when the term of the president judge of the municipal court expires, and since, under both the petition and answer, it plainly appears that no proper election of a successor has taken place, we do not deem further pleadings essential to a decision of the controversy, and shall now, in the exercise of the "plenary powers" discussed by us in Carbon County Judicial Vacancy, 292 Pa. 300, 303; Hanover Twp. School Directors, supra, 105, and Summers v. Kramer, 271 Pa. 189, 197, enter the following order, naming therein an outside judge to preside at the meeting there directed, in order to save embarrassment to the members of the municipal court, in the absence of a president judge of that tribunal:

All actions heretofore taken, and all orders heretofore entered, by the Municipal Court of Philadelphia, growing out of the meeting held by the judges of that tribunal on the first Monday of January, 1929, as to the elec-

tion of a president judge, are set aside; the office of president judge is declared vacant, and it is ordered that the Honorable JOHN E. WALSH, secretary of the board of judges of the municipal court, shall forthwith call a meeting of all the judges of that tribunal, to convene not later than Monday, January 21, 1929, for the purpose of electing a president judge for the term of five years from the first Monday of January, 1929. The Honorable HORACE STERN, president judge of Court of Common Pleas No. 2, Philadelphia County, is designated as chairman of the meeting hereby ordered, and it is directed that he shall be notified by the above named secretary of the board of judges of the time and place fixed for such meeting.