## Commonwealth, ex rel., *v.* Hyneman.

*Constitutional law—Article V, Section 6 of Constitution—Construction—Courts—Philadelphia County—Increase in number of judges—Act of March 29, 1913, P. L. 20.*

1. Where the legislature does what is forbidden, or undertakes

to do what is authorized but in a way that is violative of a constitutional direction, the duty of the courts to pronounce such legislation void is not to be evaded. No statute ought to be declared void except for clear and palpable violation or disregard of the Constitution. At the same time, the Constitution is not to receive a technical construction, but is to be studied in the light of ordinary language and such construction is to be placed upon it as was placed upon it by the people whose bond it is.

2. The number of judges in the County of Philadelphia may be increased by the legislature from time to time but only in the way the Constitution permits.

3. The Act of March 29, 1913, P. L. 20, providing for the addition of one judge to each of the five courts of Common Pleas of Philadelphia County is violative of Section 6, of Article V, of the Constitution of Pennsylvania, relating to the jurisdiction, powers and organization of the Courts of Common Pleas, which section, in the provision that "the number of judges......may be increased from time to time and whenever such increase shall amount in the whole to three, such three judges shall constitute a distinct and separate court," contemplates the creation of a distinct and separate court whenever the increase in the whole number of judges in the county shall amount to three; and the judges appointed under such act do not have a tenure to their offices.

*Jurisdiction Supreme Court—Original jurisdiction—Quo warranto—Common Pleas judge—Section 3, Article V, of Constitution.*

4. By the third section of the judiciary article of the Constitution, the Supreme Court is given original jurisdiction in cases of "quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the state"; and a Common Pleas judge is such an officer. .

ELKIN, STEWART and MOSCHZISKER, JJ., dissent.

Argued June 27, 1913. Miscellaneous Docket (No. 2), No. 619. Quo warranto by Commonwealth of Pennsylvania, ex rel. John C. Bell, Attorney General, v. Samuel M. Hyneman. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.

Quo warranto proceedings. Original jurisdiction. The opinion of the Supreme Court states the case.

*Charles Biddle* and *M. Hampton Todd,* special counsel for the Commonwealth, cited: Stegmaier v. Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593; Union Passenger Railway Co.'s App., 81* Pa. 91; Otto Township Road, 2 Pa. Superior Ct. 20, 181 Pa. 390; Com. v. Hopkins, 53 Pa. Superior Ct. 16; Gottschall v. Campbell, 234 Pa. 347.

*John C. Bell,* Attorney General, and *Theodore F. Jenkins,* for defendant, cited: Com. v. Harding, 87 Pa. 343; Com. v. Handley, 106 Pa. 245; Sharpless v. Philadelphia, 21 Pa. 147; Patterson v. Barlow, 60 Pa. 54; Com. v. Smith, 4 Binn. 117; Com. v. Zephon, 8 W. & S. 382; Com. v. Martin, 2 Pa. 244; Kilpatrick v. Com., 31 Pa. 198; Foust v. Com., 33 Pa. 338; Application of the President Judges, 64 Pa. 33; Com. v. Green, 58 Pa. 226; Com. v. Hipple, 69 Pa. 9; Morgan v. Reel, 213 Pa. 81; Com. v. Johnson, 236 Pa. 412.

OPINION BY MR. JUSTICE BROWN, July 10, 1913:

The Constitution is the supreme law of the State, and the duty of the judiciary is to determine whether any legislation violates or fails to conform to its provisions. It forbids the legislature to do certain things, and expressly authorizes others. When the legislature does what is forbidden, or undertakes to do what is authorized, but in a way that is violative of the constitutional direction, the duty of the courts to pronounce such legislation void is not to be evaded. In doing so judges speak not for themselves, but for the people, so that the compact which they made with one another for their own self-government may continue to be supreme in all legislation. That supremacy is to be maintained only through the judiciary, and, in the discharge of the abiding duty resting upon courts to maintain that supremacy, there is involved a responsibility so great that no statute ought to be declared void except for clear and palpable violation or disregard of the Constitution.

"An act of the legislature is not to be declared void, unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt": Commonwealth ex rel. O'Hara v. Smith, 4 Binn. 117. This utterance of a hundred years ago has been repeated times without number, down to the present hour, without shadow of turning. In Sharpless v. Mayor of Philadelphia, 21 Pa. 147, it is thus emphatically reannounced: "We can declare an act of assembly void, only when it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation on our minds." At the same time it is to be remembered that the Constitution is not to receive a technical construction, but is to be studied in the light of ordinary language, and such a construction is to be placed upon it as we may infer was placed upon it by the people whose bond it is: Cronise v. Cronise, 54 Pa. 255; Philadelphia, Morton & Swarthmore Street Railway Company's Petition, 203 Pa. 354. Bearing these rules in mind, we proceed to consider and dispose of the very important question before us.

On March 29, 1913, the governor of the Commonwealth approved an act of assembly entitled "Act providing for another judge in each of the Courts of Common Pleas of Philadelphia County." The two sections of the act are as follows: "Section 1. Be it enacted, etc., That it shall be the duty of the governor to appoint to each of the five Courts of Common Pleas of Philadelphia County a competent person, learned in the law, to be a judge, in addition to the judges now composing said courts. The five persons so appointed shall hold their offices until the first Monday of January next, and shall have the same powers, authority, and jurisdiction, and receive the same compensation, as the other judges of the said courts, respectively. Section 2. That on the day of the next municipal election, and thereafter at such time and times as may be prescribed by the Constitution of this Commonwealth, the qualified electors of the

County of Philadelphia shall elect five competent persons, learned in the law, to serve as additional judges of the said Courts of Common Pleas, one in each court, who shall be commissioned and hold office for the term provided by the Constitution, and shall have the same powers, authority and jurisdiction, and receive the same compensation as the other judges of the said courts, respectively." In pursuance of this act Samuel M. Hyneman, the defendant, was appointed to the office of judge of the Court of Common Pleas No. 1, in and for the County of Philadelphia, for a term beginning June 4, 1913, and ending on the first Monday of January, 1914. He took the oath of office required by the Constitution on June 9, 1913, and has since continued and is now in the possession and exercise of the said office. This proceeding was instituted to determine his right to hold that office, the right to do so being challenged on the ground that it was created in violation of Section 6, Article V, of the Constitution, as amended in 1911. The first section, as so amended, is as follows with regard to the County of Philadelphia: "In the County of Philadelphia all the jurisdiction and powers now vested in the District Courts and Courts of Common Pleas, subject to such changes as may be made by this Constitution or by law, shall be in Philadelphia vested in five distinct and separate courts of equal and co-ordinate jurisdiction, composed of three judges each. The said courts in Philadelphia shall be designated respectively as the Court of Common Pleas, number one, number two, number three, number four, and number five, but the number of said courts may be by law increased, from time to time, and shall be in like manner designated by successive numbers. The number of judges in any of said courts, or in any county where the establishment of an additional court may be authorized by law, may be increased from time to time, and whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court as afore-

said, which shall be numbered as aforesaid.  In Philadelphia all suits shall be instituted in the said Courts of Common Pleas without designating the number of the said court, and the several courts shall distribute and apportion the business among them in such manner as shall be provided by rules of court, and each court, to which any suit shall be thus assigned, shall have exclusive jurisdiction thereof, subject to change of venue, as shall be provided by law."

By the third section of the judiciary article of the Constitution this court is given original jurisdiction in cases of "quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the State"; and a Common Pleas judge is such an officer: Commonwealth ex rel. Attorney General v. Dumbauld, et al., 97 Pa. 293.

The right of the defendant to continue in his office depends upon the validity of the act of the legislature under which he was appointed.  The touchstone by which that validity is to be tested is the above-quoted section of the Constitution.  A clear, dominant thought of the framers of the Constitution, and of the people who adopted and amended it, was that each Court of Common Pleas of the County of Philadelphia should be composed of three judges.  While the number of these courts may be increased from time to time, each additional court must be composed of three judges. Three judges are the unit of a Court of Common Pleas in the said county.  The number of judges in any one of these courts may be increased from time to time, as the public needs or the prompt administration of justice may require, but the sentence in Section 6 of the judiciary article authorizing such increase provides consistently with what precedes—"whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court as aforesaid, which shall be numbered as aforesaid."  What is the unmistakable meaning of these words?  If they mean,

as learned counsel for defendant contend, an increase in any one of the existing courts, why were the words "in the whole" inserted? The meaning contended for would have been expressed by the omission of those words, for the sentence would then read thus: The number of judges in any of said courts, or in any county where the establishment of an additional court may be authorized by law, may be increased from time to time, and whenever such increase shall amount to three, such three judges shall compose a distinct and separate court as aforesaid, which shall be numbered as aforesaid. But the sentence is not so written, and the phrase "in the whole" cannot be regarded as mere idle words. They were inserted for some purpose, and that manifest purpose was to provide that, whenever three judges should be added to the judicial force of the Courts of Common Pleas of Philadelphia County, such three judges without regard to the particular court or courts in which they might be made additional judges, should constitute the unit of a new, distinct and separate court, to be established by the same legislature that created the third additional judge. In establishing such a distinct and separate court, to be composed of the three additional judges, the first two appointed would merely be transferred to the new court, there to meet the third and proceed with him to organize that court in accordance with the legislative directions. Neither of the first two judges would be ousted from his office, but each would go from his court to another of the same jurisdiction, to which he knew at the time he was appointed or elected as an additional judge he would go, under the Constitution, whenever he should become one of the three newly created judges. But for the words, "whenever such increase shall amount in the whole to three," the Act of March 29, 1913, would not be violative of the Constitution; but these words are there, and not without a purpose. That purpose was the creation of a distinct and separate court, whenever the increase in the whole

number of judges in the county should amount to three. No transposition of the words "in the whole" is needed to understand their meaning. Standing just as they are, with no transposition of a word in the same sentence, they are susceptible of but one meaning. If the defendant is to be permitted to hold his office, they must either be eliminated altogether or be read as referring only to each separate and distinct Common Pleas Court. That this court has no power to eliminate or disregard them, not even the most zealous advocate of the Act of 1913 would pretend; and to ask us to say that they ought to be read as meaning an increase of three in any one court is an assumption that neither the intelligent framers of the Constitution nor the people who ratified it understood the use or meaning of plain words. If they had intended to say that an increase of three "in the whole" meant an increase in the number of judges in any one court, it would have been so written in the Constitution, awkward as the expression might be; for how could an increase of three in any one court be anything but a whole increase of three in that court? It is not so written in the Constitution, and we dare not give any other meaning to the words "in the whole" than the whole number of judges in the county. In so doing the clear intendment of the sixth section of the Constitution is given effect, to wit, for every three judges there is to be a distinct and separate court. It may be that, if the act under consideration had provided for an increase of but three judges—one in each of three of the existing five courts—they would, upon their appointment, have automatically become Court of Common Pleas No. 6 in and for the County of Philadelphia, for the constitutional provision is that, "whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court as aforesaid"; but with five new judges created at one time, who is now to say which three of them are to compose a distinct and separate court? This surely could not be a question for

us, especially in view of the mandatory words of the Act of 1913, that, at the next municipal election, "the qualified electors of the County of Philadelphia shall elect five competent persons, learned in the law, to serve as additional judges of the said Courts of Common Pleas, one in each court." If the act could be upheld, there would be one additional judge elected to each of the five existing courts.

Under the construction which we are asked to place upon the section of the Constitution under consideration, there might be ten additional judges created for the County of Philadelphia—two for each of the existing courts—and a sixth court could not be established until eleven additional new judges had been created. The mere statement of this proposition ought to be all sufficient to carry conviction to any one that such a condition was never contemplated, the clear intendment of the Constitution, if "studied in the light of ordinary language," being that every three judges in that county shall constitute a court.

It may be said that a difference of opinion among us as to the constitutionality of the Act of March 29, 1913, ought of itself to create a doubt in the minds of a majority to be resolved in favor of the constitutionality of the act. The answer to this is, that the supreme duty resting upon every member of the court in every case, without regard to the character of the question involved —from performance of which duty he cannot shrink—is to record his considerate judgment, when reached without doubt or hesitation and after having given all due consideration to the conflicting views of colleagues. In many notable cases, familiar to all, where federal or state legislation has been pronounced unconstitutional, dissenting opinions have been filed by learned judges who differed from the majority—in some instances a bare majority of the court—but such difference of opinion has never been regarded as a sufficient reason for inducing the majority to change their view or with-

hold their judgment.  A very recent illustration of this
is Adinolfi v. Hazlett, 242 Pa. 25, in which an opinion
was filed at the last session of this court, pronouncing
an act of assembly unconstitutional, though one of the
five judges who heard the case filed a dissenting opinion.

The number of judges in the County of Philadelphia
may be increased by the legislature from time to time,
but only in the way the Constitution permits.   This is
conceded.  The direction of that instrument was not fol-
lowed in the passage of the Act of 1913, and the judges
appointed under it do not, therefore, have a tenure to
their offices.

And now, to wit, July 10, 1913, after hearing and
upon due consideration, judgment is entered for the
Commonwealth ; and it is further ordered and adjudged
by the court that the said Samuel M. Hyneman be and
he is hereby ousted from the office of judge of the Court
of Common Pleas No. 1 of the County of Philadelphia,
and from the franchises, fees and emoluments thereof,
and that he pay the costs of this proceeding.


DISSENTING OPINION BY MR. JUSTICE ELKIN, July 10,
1913:

I cannot agree that the Act of March 29, 1913, is un-
constitutional.   This act provides for an additional
judge in each of the Courts of Common Pleas of Phila-
delphia County, and in my opinion is a valid exercise of
legislative power.  The Federal government has no pow-
ers except such as were expressly reserved by, or neces-
sarily implied from, the Constitution of the United
States, while the several states possess all powers
not expressly forbidden.  Congress can pass no laws
but those authorized by the Federal Constitution,
while the legislature of each state has jurisdiction
of all subjects of a legislative character not pro-
hibited.  The legislative powers of the several states
are limited only by the constitution of each particu-
lar state and by powers reserved to the national

government by the Federal Constitution. Except as limited by the constitution, the power of the legislature to make laws for the people of a state is supreme. When, therefore, any one challenges the validity of an act of assembly, he assumes the burden of showing the precise manner in which the organic law has been contravened; failing to do so, the act stands. This principle has been iterated and reiterated so repeatedly by our Pennsylvania courts that it has become axiomatic. The legislature has jurisdiction of all subjects not prohibited by the Constitution: Com. v. Hartman, 17 Pa. 118; Weister v. Hade, 52 Pa. 474; Swartz v. Carlisle Boro., 237 Pa. 473. Federal powers are construed strictly, while legislative powers are to be given a liberal construction. From the beginning our Pennsylvania courts have adhered tenaciously to this rule when statutes have been attacked on constitutional grounds. As far back as Com. v. Smith, 4 Binn. 117, this court said that an act of the legislature is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. We have also said that an act of assembly can be declared void only when it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in our minds: Sharpless v. Philadelphia, 21 Pa. 147. We followed the principle of these cases in Patterson v. Barlow, 60 Pa. 54; Wells v. Bain, 75 Pa. 39; Com. v. Butler, 99 Pa. 535; and have never departed from it in the slightest degree. The principle has been approved and reasserted by this court as at present constituted in several recent cases: Morgan v. Reel, 213 Pa. 81; Gottschall v. Campbell, 234 Pa. 347; Minsinger v. Rau, 236 Pa. 327; Com. v. Johnson, 236 Pa. 412. True it is that in each of these cases the decision was by a majority of the court, but the judgment was none the less binding for this reason. It is because, in my opinion, the present case is a departure from this settled rule of construction that I feel warranted in expressing these dis-

senting views.   Keeping in mind the rule to which reference has been made that a statute is not to be declared void unless in clear violation of the Constitution, and to such an extent as to leave no doubt or hesitation in our minds, let us examine the provisions of Article V, Section 6, of our organic law to discover whether the legislature exceeded its powers in passing the Act of 1913.   This section provides that in the County of Philadelphia all the jurisdiction and powers now vested in the District Courts and Courts of Common Pleas shall be vested in four distinct and separate courts of equal and co-ordinate jurisdiction; which shall be designated respectively as the Court of Common Pleas number one, number two, number three and number four.   Why the framers of the Constitution deemed it wise to establish four distinct and separate courts with equal and co-ordinate jurisdiction in the County of Philadelphia is a matter with which this court has no concern.   It is sufficient to say that it is so written and is, therefore, binding not only upon the people but upon the courts and all other branches of government that have to do with the making and enforcement of law.   No one can carefully read this section of the Constitution without concluding that each of the several Courts of Common Pleas in Philadelphia County is separate and distinct from the other courts of that county, and that each acts independently of the others in the exercise of judicial power.   The Constitution makes each court a separate unit in its organization and in the exercise of all judicial functions.   With this thought in mind let us look at the provision of Section 6 relating to the increase of judges, being the one upon which this controversy depends.   It is as follows: "The number of judges in any of said courts, or in any county where the establishment of an additional court may be authorized by law, may be increased, from time to time, and whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and

separate court as aforesaid, which shall be numbered as aforesaid." It will thus be seen that the Constitution does not forbid an increase in the number of judges, but on the other hand expressly authorizes the legislature to make such increase from time to time. The language is plain and it is not necessary to resort to technical rules of construction to determine its meaning. The number of judges in any of said courts may be increased from time to time as the legislature in its wisdom may determine. To what does the phrase "in any of said courts" have reference? The sentence of which this phrase is a part immediately follows the designation of Courts of Common Pleas numbers one, two, three, and four, and can only mean an increase in the number of judges "in any of said courts." This certainly is equivalent to saying that there may be an increase in the number of judges in each of said courts. This is what the Constitution says and it is the natural import of the words used. In etymology "any" and "any one" have the same meaning and refer to some object in the singular; as in the present case to one separate court. But it is argued that the meaning of these words is qualified by what follows in the same sentence. The language relied on to qualify the primary meaning of the words just discussed is, "whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court as aforesaid." The contention is that the words "whenever such increase shall amount in the whole to three," refer to the whole increase in all of the courts and not to the whole increase in any of the courts. This may be plausible, but to my mind such a construction does violence to the plain meaning of the language and is in disregard of the context. These words are a part of the sentence which authorizes an increase in the number of judges in any of said courts, and "such increase" must necessarily refer to what immediately precedes. If then, what immediately precedes was an authorization to in-

crease the number of judges in any of said courts, meaning each or any one of said courts, it follows that when such increase in any of said courts amounts in the whole to three, a distinct and separate court shall be established. Whether this was wise or unwise is not for us to say, for what was written in the Constitution must be observed no matter how we may regard its wisdom. It may very well be that the framers of the Constitution had in mind that increases in each of said courts would be made from time to time as the necessities of each particular court seemed to require, and that no more than one judge would be added at any session of the legislature. As for instance, suppose the legislature in 1907 had provided for an additional judge in Court of Common Pleas No. 1, and in 1911 had added another judge to the same court, and in 1913 the business of that court required still another judge, which if added would make the whole number three, then clearly a situation would arise in which an additional court should be established. This may be an extreme illustration, as such a situation is not likely to arise, but it is possible under the plain language of the Constitution, and, therefore, we are at liberty to suggest it. Again, even the learned counsel for the relator concede that the legislature has the power to add a judge to Court of Common Pleas No. 1, and to Court of Common Pleas No. 2, without doing violence to the Constitution. Suppose the legislature in 1909 had added a judge to Court of Common Pleas No. 1 and in 1911 had added another judge to Common Pleas No. 2, and these judges had been duly elected and were serving when the legislature in 1913 convened, at which time another judge was added to Court of Common Pleas No. 3, without establishing a new court composed of three judges. Under the construction contended for by counsel for the relator what would happen to the additional judges elected in 1909 and 1911? Would they be ousted because the legislature in 1913 added another judge to Court of Common Pleas No. 3? No matter

what view we may take of the section of the Constitution
in question it was a valid exercise of legislative power
to add another judge to Common Pleas No. 1 and No. 2
in 1909 and 1911, and we look in vain for any authority
to warrant an inference that the judges so elected could
be ousted because the legislature deemed it wise in 1913
to add another judge to a different court without estab-
lishing a separate court composed of three judges. Yet
this is the logic of the position of those who contend
that the Act of 1913 is invalid on constitutional grounds.
This view does not appeal to me and I cannot bring my-
self to believe that any such result was contemplated
by the framers of our organic law. No such result is
possible if we give to the language of the Constitution
its plain meaning and are content to follow settled rules
of construction.

The Constitution provides in express terms not only
for the increase of judges, but for the increase of courts.
As to the increase in the number of courts the language
is not mandatory but permissive. The number of courts
may be increased from time to time, and this power is
separate and distinct from the power to increase the
number of judges. There is one power to increase the
number of courts and another power to increase the
number of judges in each of said courts. The legislature
may exercise either or both powers as necessity seems
to require. In this respect the legislature was vested
with large powers and wide discretion, and in my
opinion this was a wise provision of the Constitution.
There may be a very good reason, such as lack of suita-
ble quarters, for preferring to increase the number of
judges in courts already established rather than to in-
crease the number of courts which would require addi-
tional officers and a separate organization. The work
would no doubt be as expeditiously done by adding an-
other judge to courts already established, and such con-
siderations may have been controlling with the legisla-
ture. The Constitution gave the legislature the power

to increase the number of judges, and the Act of 1913 is the legislative expression of that power, and I can see no sufficient reason for saying that the organic law has been offended against.

If the legislature had limited the increase to an additional judge in Common Pleas numbers one and two, no one would question the constitutionality of such an act. It, however, did not stop there, but also added a judge to Courts Nos. 3, 4 and 5. How does this fact affect the unquestioned power to add judges to numbers one and two? Or why should a valid exercise of power in adding two additional judges be declared void and of no effect because three other judges were added, even if we accept the view so strongly pressed upon us by learned counsel for relator? Under no theory can I see any justification for striking down the act in so far as it added an additional judge to two of the courts. The legislature had the power to add two new judges no matter what view we may take of the Constitution.

I assume that in order to facilitate the work of the courts in Philadelphia there is an existing necessity to provide more judges, and it is apparent that the legislature was so impressed; and it seems to me that all doubts should be resolved in favor of the validity of an act intended to expedite the trial of causes and the dispatch of business in the largest county of the Commonwealth, having one-fifth of our total population and perhaps even a greater proportion of legal business.

Then, again, it may be worthy of a passing thought to suggest that the Constitution in mandatory language provides that "whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court." Why does not this plain provision of the Constitution take care of the present situation? When three judges are added they shall compose a separate court. Three judges have been added, why not follow the mandate of the Constitution by saying that three of the judges shall compose a separate

court rather than strike down an act intended to serve a wholesome public purpose? If this view were adopted there need be no refinement as to the meaning of the phrase "whenever such increase shall amount in the whole to three."

Assuming, however, that the language of the Constitution is not clear, and that it is fairly susceptible of different interpretations, under the settled rule of our cases, the doubt is to be resolved in favor of the validity of the act. If there be doubt or hesitation in our minds as to the meaning of the Constitution, the act should not be declared void. It has been so decided in many of our cases. The case at bar comes clearly within this rule. Counsel and court are divided in opinion as to the meaning of the section of the Constitution in question in this proceeding, and according to my view these doubts should be resolved in favor of the act. This court has frequently so declared, and in no case called to my attention was there greater reason for the application of the rule than in the one we are now considering. A statute should never be declared void unless clearly in violation of the Constitution. When the meaning of the Constitution is in doubt the act should stand because the power of the legislature is supreme except as limited by the organic law.

I would sustain the Act of 1913 and dismiss the present proceeding.

DISSENTING OPINION BY MR. JUSTICE STEWART, July 10, 1913:

The general scheme of the judiciary article in our Constitution contemplates probable increased business demands in the County of Philadelphia requiring additional judicial facilities to those therein provided. To meet such contingency two distinct methods of enlargement are provided: one looking to an increase of judges in the several courts as established; the other looking to an increase in the number of the courts. It is

quite evident, I think, that the purpose of the latter was to supplement the former, and that the latter was to be applied only as a secondary measure of relief when further enlargement under the former was halted by constitutional restriction or considerations of public policy. The number of the courts had been fixed at four, and the number of judges in each at three, but with power in the legislature to increase either or both, neither being a fixed number, except as it expressed a measure thought appropriate and adequate under conditions then existing. No reason can be suggested for ascribing any other significance to the figure which determines the number of judges in each court, than that which belongs to the figure determining the number of courts. It is left to the legislature to change either at pleasure. The provision with respect to increase in number of courts, after fixing the number at four (by Act of February 13, 1901, made five), is, "but the number of said courts may be by law increased from time to time, and shall be in like manner designated by successive numbers." The provision with respect to increase in number of judges is, "the number of judges in any of said courts......may be increased from time to time, and whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court as aforesaid, which shall be numbered as aforesaid." The unmistakable reference in the latter provision is to the five courts separately considered, the language being "the number of judges in any of said courts may be increased, etc." These courts are "distinct and separate courts of equal and co-ordinate jurisdiction," and though the judges composing them are chosen by the same electorate, they are organically independent, and as unrelated to each other as they are to the several courts of like jurisdiction in the State. Therefore it is, that when the reference in the Constitution is to "any of these courts," the reference must be to each of those included in the class, re-

garded as a specific judicial entity brought within the scope of the provision as much as though it were the only one of its class. Now what is the restriction or qualification upon this power to increase the number of judges? Absolutely none except that when such increase in the number of judges "shall amount in the whole to three, such three judges shall compose a distinct and separate court as aforesaid." What increase is here meant? Increase in the aggregate of the judges composing five distinct, separate and unrelated courts? Not at all. Any such construction is to my mind—I say it with deference—in open disregard of the plain language of the Constitution. The judges "in any of said courts" may be increased, and "whenever such increase"—not in the aggregate of all the courts, for the sentence has no such subject, but "in any of said courts," that is to say, in any single one of said courts,—shall amount "in the whole" to three, such three judges shall compose a distinct and separate court as aforesaid. The significance of the word "any" in the connection in which it is used is controlling. Neither by derivation nor usage can other meaning be given this word than a single one of many whoever or whatever it may be. The only subject in the sentence is the five courts to be established, and by "any" when here applied must be understood each and every individual court without distinction. The use of the word "whole" as it occurs, while not perhaps indispensable to give to the provision the meaning I derive, is helpful, and in no possible sense does it suggest conflict with the view expressed. The purpose in its use I think apparent. The addition of a single judge, or at most of two judges, could be made at any time. Suppose an addition of one, and this followed at a later time by the addition of another, and suppose a further addition of a third to the same court were proposed. Then we would have a case falling exactly within the contingency provided by the Constitu-

tion, and a third court would result, because the total number of those from time to time added would collectively amount to a whole, that is to say, to a number necessary to constitute a separate court. "Whole" is applied to everything of which there may be a part. Here we have a process prescribed which, if continued, must produce an additional court composed of those parts which the process, in the course of its proper working, has developed. When all the parts have been constructed, the end of the process has been reached, and an entire thing—an additional court—has resulted. The construction of this word "whole" contended for in the majority opinion would lead to this most singular and, to my mind, unreasonable result—the legislature might provide for a single addition to Common Pleas No. 1, a like addition to Common Pleas No. 2, but a single addition thereafter to either of the other courts would be impossible, since the election of an additional judge, even though specifically intended for one of the courts in which there had not been theretofore an increase of judges, would necessarily compel the creation of another court, by subtracting from Courts Nos. 1 and 2 regardless of what might be the peculiar requirements of these separate individual courts, and denying to the specific court to which the additional judge was chosen the relief which in legislative opinion it required. We might well ask, to what reasonable end? I cannot bring myself to believe that any such result was ever intended, especially when, to my understanding, the plain language of the Constitution indicates a different purpose. I would sustain the legislation.

DISSENTING OPINION BY MR. JUSTICE MOSCHZISKER, July 10, 1913:

The power of the judiciary to declare void a legislative enactment which contravenes the organic law, is established, but this is subject to the restriction that no court has the right to exercise such power unless the

legislation attacked so plainly violates some mandate of the Constitution that it cannot be sustained under any reasonable construction. It is the duty of every judge, without regard to his opinion as to the necessity for or the wisdom of the act of assembly before him, to search for a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible. The failure to observe this fundamental principle has in many instances brought justifiable reproach upon the judiciary; it seems to me that the majority view in the present case represents a departure therefrom, and in this I cannot concur.

With the superfluous words eliminated, Section 4, of the Constitution reads: "Until otherwise directed by law the Courts of Common Pleas shall continue as at present established, except as herein changed"; and Section 6: "In the County of Philadelphia all the jurisdiction and powers now vested in the District Courts and Courts of Common Pleas, subject to such changes as may be made by this Constitution or by law, shall be vested in five distinct and separate courts of equal and co-ordinate jurisdiction composed of three judges each. The number of judges in any of said courts, or in any county where the establishment of an additional court may be authorized by law, may be increased from time to time, and whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court as aforesaid."

The only question is, do the words of the above quoted section require the construction adopted by the majority, which limits the control of the legislature over the re-organization of the courts of Philadelphia County in such a manner and to such an extent that the present act cannot stand? In approaching a solution of this question we must start with the thought that the general assembly has full authority to reorganize existing courts, subject only to the restrictions expressed in the

Constitution, and that any doubt concerning the extent of the limitations upon this right must be resolved against its abridgement. When we keep this thought in mind, it is clear that the majority construction is not at all necessary; therefore, it represents an unwarranted exercise of power.

A mere glance at the part of the Constitution in question will show to anyone that the unit in contemplation is the separate court and not the combination of courts; this is plain, for each court is expressly recognized throughout the section as "a distinct and separate court." With this key to the situation, when the words dealing with the subject of an increase are reached, the language, "the number of judges in any of said courts may be increased from time to time, and whenever such increase shall amount in the whole to three, such three judges shall compose a distinct and separate court," can well be read to mean, "such increase in the number of judges in any one of said courts," and not "in all of said courts"; thus the word "whole" is made to qualify the word "increase," which is warranted by the rules of grammar as well as the principles of legal construction. The section is susceptible of this interpretation, and hence it should be so construed. To my mind, under the rules controlling constitutional interpretation, it not only should but must be so construed; and with the Constitution thus read, the act before us is valid. If there is a doubt as to the real meaning of the Constitution, all our cases hold that it must be resolved in favor of and not against the validity of the act; and under the circumstances, particularly when we find this court almost evenly divided upon the subject, it is difficult to understand how the language for consideration can be looked upon as free from doubt.

It seems to me that the endurance of the American system under which constitutional questions are submitted to the courts for final determination is dependent on a close adherence to the general principles stated in

this opinion, and that the majority have in effect ignored these principles in the present case; therefore, I note my dissent.