## Collins, Appellant, v. Gessler.

472

Argued April 23, 1973.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stuart S. Bowie,* for appellant.

*Joseph T. Labrum, Jr.,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1973:

This action in quo warranto was filed by plaintiff, Arthur W. Collins, on December 18, 1972, invoking the original jurisdiction of the Commonwealth Court. In his complaint plaintiff averred that he was the lawfully appointed Justice of the Peace for Magisterial District 32-1-10 in Delaware County. He further averred that neither the Court of Common Pleas of Delaware County nor the Supreme Court of Pennsylvania had the power to "appoint" defendant, Joseph V. Gessler, as District Justice of the Peace for Magisterial District

32-1-10, and that defendant was serving as District Justice of that district without lawful authority.

The facts providing the impetus for this controversy follow: Prior to July 10, 1972, William J. Getty, Jr. was the District Justice of the Peace for Magisterial District 32-1-10 in Delaware County, which included the Borough of Swarthmore and the Township of Nether Providence. On July 10, 1972, the Supreme Court ordered District Justice Getty removed from office pursuant to Article V, Section 18(d) of the Constitution of Pennsylvania. Thereafter, in an order dated October 27, 1972, the Court of Common Pleas of Delaware County abolished the neighboring Magisterial District 32-2-9 (the Borough of Media) and merged that district with the former District 32-1-10, thereby creating a new consolidated district which it labelled 32-1-10.[1] De-

---

[1] The precise procedure employed by the common pleas court in this merger has, in a large measure, been responsible for the subsequent confusion and this present controversy. It seems clear that if the court had reversed the procedure and abolished District 32-1-10 (the vacant district) and merged that district with District 32-2-9 (defendant's district), and entitled the merged district 32-2-9, plaintiff's claim would be foreclosed. In that event defendant would have been the Justice of the Peace for District 32-2-9 both prior to, and after, the merger and there would have been no vacancy and no occasion for an appointment.

However, for a purely clerical reason this procedure could not be employed. After the merger a second class district (32-2-9) could no longer exist since the surviving, new district was a first class district. (Districts are classified by the Legislature on the basis of population. See Act of December 2, 1968, P. L. 1131, §4, 42 P.S. §1304 (Supp. 1973)). Additionally the number "10" had to be used because otherwise there would have been a hiatus in the numerical order of the first class districts. For these record-keeping and administrative reasons the common pleas court employed the technique of ostensibly abolishing the non-vacant district (32-2-9) and merging it with the vacant district (32-1-10) in order to obtain a merged district with the proper number and classification (32-1-10). This technique, however, should not affect the substance of

474

fendant, Gessler, who had been the District Justice of the Peace for the former District 32-2-9 was designated by the Common Pleas Court's Order to serve as the District Justice for the newly merged District 32-1-10. In an Order dated November 1, 1972, this Court approved the Common Pleas Court's Order of October 27, 1972.

Subsequently, on December 1, 1972, the Governor of the Commonwealth, apparently unaware of the court mandated substantive merger and in apparent reliance upon the numerical designation of merged District 32-1-10, appointed plaintiff to fill the office of District Justice of the Peace for that district—newly merged.[2] Plaintiff thereupon, on the basis of his commission, by a quo warranto action in the Commonwealth Court sought an adjudication declaring him "to be the lawful District Justice of the Peace in and for Magisterial District 32-1-10 and ordering Defendant Gessler to surrender possession of the offices, books, seal and records of the said Magisterial District 32-1-10 . . . ."

On January 8, 1973, defendant filed Preliminary Objections questioning the original jurisdiction of the Commonwealth Court in this matter. Defendant in his preliminary objections also contended that the Constitution of Pennsylvania reposes all power and administrative authority over District Justices, Magisterial Districts, and their boundaries in the Supreme Court and that therefore defendant, not plaintiff, was the lawfully designated District Justice for the merged Magisterial District 32-1-10.

Defendant also filed a Demurrer to plaintiff's complaint contending that the complaint failed "to allege facts upon which relief can be granted because under the allegations of the Complaint, no vacancy existed or

this procedure, which was, in essence, to merge a vacant district (32-1-10) with an existing, occupied district (32-2-9).

[2] See Pennsylvania Constitution, Art. V, Section 13(b).

now exists in the merged Magisterial District 32-1-10 to which Plaintiff alleges he has been appointed."

On February 13, 1973, the Commonwealth Court, pursuant to the Appellate Court Jurisdiction Act (Act of July 31, 1970, P. L. 673, Art. V, §503(b), 17 P.S. §211.503(b) (Supp. 1973)), issued an Order transferring the action in quo warranto to this Court, stating in that Order, inter alia, that it was "without jurisdiction to decide issues touching upon the power and authority of the Supreme Court of Pennsylvania under the Constitution of Pennsylvania or the courts of common pleas acting under its direction, . . . ."

We must now pass upon defendant's Preliminary Objections and Demurrer, pursuant to our original jurisdiction. Initially we note that this Court does possess original jurisdiction of the present controversy, contrary to plaintiff's assertion that jurisdiction properly lies in the Commonwealth Court.

Section 201 of the Appellate Court Jurisdiction Act provides: "The Supreme Court shall have original but not exclusive jurisdiction of: . . . (3) All cases of quo warranto as to any officer of statewide judisdiction." Act of July 31, 1970, P. L. 673, art. II, §201, 17 P.S. §211.201 (Supp. 1973). Thus, if a district justice of the peace is an "officer of statewide jurisdiction" this Court has original jurisdiction over the present controversy.[3]

---

[3] Plaintiff erroneously invoked the original jurisdiction of the Commonwealth Court, relying on Section 401(a) of the Appellate Court Jurisdiction Act and Rule 1112 of the Pennsylvania Rules of Civil Procedure. Section 401(a) provides:

"(a) The Commonwealth Court shall have original jurisdiction of:

"(1) All civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity, . . . ."

"(2) All civil actions or proceedings by the Commonwealth or any officer thereof, acting in his official capacity, . . . ."

A careful review of the pertinent Constitutional and statutory provisions, as well as the relevant decisional law, clearly establishes that district justices of the peace are, indeed, "officers of statewide jurisdiction." Article V, Section 1 of the Constitution of Pennsylvania provides for a "unified judicial system" in which "[a]ll courts and justices of the peace and their jurisdiction shall be . . . [included]." This specific inclusion of justices of the peace in this section manifests an unambiguous intention to incorporate these judicial officers as an integral part of this statewide "unified judicial system."

Article V, Section 7(a) of the Constitution directs that "there shall be one justice of the peace in each magisterial district" and that "[t]he jurisdiction of the justice of the peace shall be as *provided by law*." (Emphasis added). In accordance with this Constitutional mandate, the Legislature has provided that: "justices of the peace and district justices, in this Commonwealth, shall have *concurrent jurisdiction with the courts of common pleas* of all actions arising from contract, either express or implied, and of all actions of trespass, wherein the sum demanded does not exceed one thousand ($1,000) dollars, except in cases of real contract where the title to lands or tenements may come in question." (Emphasis added). Act of July 7, 1879,

---

Act of July 31, 1970, P. L. 673, art. IV, §401, 17 P.S. §211.401 (Supp. 1973). Rule 1112 states in part:

"(c) An action brought in the name of a party who has an interest distinct from that of the general public may be brought in and only in

"(1) Dauphin County when the action is against an officer of the Commonwealth; . . ." Pa. R.C.P. 1112.

Plaintiff's interpretation of and reliance upon these provisions is misplaced. Section 201 of the Appellate Court Jurisdiction Act, on its face, is controlling in this case. Act of July 31, 1970, P. L. 673, art. II, §201, 17 P.S. §211.201 (Supp. 1973).

P. L. 194, §1, as amended by Act of June 1, 1972, 42 P.S. §241 (Supp. 1973). Although limited by statute as to jurisdictional *amount and type of action,* in all other respects the jurisdiction of a district justice of the peace and a common pleas judge is *concurrent.* Article V, Section 16(a) of the Constitution which provides that "justices of the peace shall be compensated by the Commonwealth," further indicates that all judicial officers are officers of the Commonwealth. Moreover, Rule 317 of our Pennsylvania Rules of Conduct, Office Standards and Civil Procedure for Justices of the Peace states: "A justice of the peace may issue subpoenas throughout the Commonwealth to require the attendance of witnesses in any cause of action triable before him." The undeniable implication of Rule 317 is that an official with statewide subpoena powers is an official with statewide jurisdiction.

In *Commonwealth ex rel. v. Hyneman,* 242 Pa. 244, 88 Atl. 1015 (1913), this Court held that its original jurisdiction had been properly invoked in an action in quo warranto involving a common pleas judge. There faced with a provision in the Constitution of 1874 giving original jurisdiction to the Supreme Court in cases of "quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the State," this Court concluded that "a common pleas judge is such an officer." Id. at 249, 88 Atl. at 1016. See *President Judge Determination Cases,* 420 Pa. 243, 216 A. 2d 326 (1966); *Commonwealth ex rel. Kelley v. Brown,* 327 Pa. 136, 193 Atl. 258 (1937); *Commonwealth ex rel. Baldrige v. Glass,* 295 Pa. 291, 145 Atl. 278 (1929). Manifestly, then, if our original jurisdiction is properly invoked in a quo warranto action involving a common pleas judge, because he has statewide jurisdiction, and a district justice of the peace has concurrent jurisdiction, as mandated by statute, with that of a common

pleas judge, it follows inexorably that this Court possesses original jurisdiction in a quo warranto proceeding involving a district justice of the peace.

Turning to the merits of the dispute, plaintiff contends, in answer to defendant's preliminary objections, that this Court has neither the power to merge existing magisterial districts nor the power to "appoint" a district justice of the peace to an existing vacancy, because such appointive power, under the Constitution, belongs to the Governor. Plaintiff argues that the Order of the common pleas court, approved by this Court on November 1, 1972, cannot extinguish that exclusive, constitutionally mandated authority of the Governor to fill, by appointment, existing vacancies in judicial offices. Therefore he concludes that the Governor's appointment of December 1, 1972, established plaintiff as the only lawful district justice of the peace for Magisterial District 32-1-10.

We are compelled to disagree with plaintiff's contentions in two fundamental respects. First, on the facts of this case the Constitution of Pennsylvania unmistakably vests the Supreme Court with the authority and power to consolidate, merge, or realign magisterial districts. Second, following the merger, the former District 32-1-10, as a separate entity, ceased to exist, and thus there was no office to which an appointment could have been made.

Article V, Section 10 of the Constitution provides in pertinent part that: "(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate." This, of course, is quite consistent with the concept of a "unified judicial system," announced in Article V, Section 1. More specifically,

Article V, Section 7 directs that: "(b) . . . The number and boundaries of magisterial districts of each class within each judicial district shall be *established* by the Supreme Court or by the courts of common pleas under the direction of the Supreme Court *as required for the efficient administration of justice* within each magisterial district." (Emphasis added).

Plaintiff urges that the use of the word "establish" in this section restricts the "general supervisory and administrative authority" of this Court over magisterial districts only to the initial creation of each district, and that "this directive was never intended to continue after the magisterial districts had been established." However, we are not persuaded that the word "established" must be given such a restrictive interpretation, especially when read in the context of Section 7. That section gives the Supreme Court the power to establish "the number and boundaries of magisterial districts . . . *as required for the efficient administration of justice.*" This latter phrase carries the clear implication of a *continuing power* to establish boundaries for these districts *if the need arises* ("as required") to insure the efficient administration of justice. It would, indeed, be anomalous for the Constitution to grant general supervisory powers to the Supreme Court over these districts, to empower the Court to "create" these districts "as required for the efficient administration of justice," and yet to withhold from the Court the power to continue to supervise these districts should the needs of the efficient administration of justice change at some later date.[4]

---

[4] Section 13 of the Schedule to the Judiciary Article (Article V) of the Pennsylvania Constitution states that "the provisions of this article regarding the establishment of magisterial districts and the instruction and examination of justices of the peace . . . [should be] . . . self-executing, until otherwise provided by law in

Moreover, the word "establish" employed in an identical context in the United States Constitution has never been given the unduly restrictive interpretation plaintiff would have this Court impose here. The power delegated to Congress in Article I, Section 8 to ". . . *establish* an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States, . . ." and ". . . to *establish* Post Offices and post Roads; . . ." (emphasis added) irrefutably creates a continuing authority in Congress not only to initiate but also to continue to regulate these matters should the need arise. So, too, the Pennsylvania Constitution does not intend that magisterial districts, once created by this Court, are unalterably established, and thus effectively removed from the expressly granted "general supervisory and administrative authority" of this Court over those districts. Such an interpretation would freeze the districts as initially created, regardless of the need for the "efficient administration of justice." The Pennsylvania Constitution, vests in this Court, the power to merge or consolidate magisterial districts as required by the needs of justice, and the efficient and effective administration of the state's unified judicial system.

---

a manner agreeable to this article." To date the Legislature has not seen fit to enact any scheme for regulating these magisterial districts other than the manner set forth in the relevant sections of Article V, itself.

Moreover, Sections 7 and 10 of Article V should be contrasted with Section 11 of that same Article which provides: "The number and boundaries of *judicial districts* shall be changed by the General Assembly only with the advice and consent of the Supreme Court." (Emphasis added). The Constitution thus specifically reserves to the General Assembly the power to change *judicial districts*, with the approval of this Court, while entrusting to the Supreme Court (in Sections 7 and 10) the authority to regulate the subject of *magisterial districts* within those judicial districts.

Plaintiff's argument that he, and not defendant, is the lawful district justice of the peace for Magisterial District 32-1-10 must also be rejected because at the time of his appointment that office no longer existed and thus there was no existing vacancy to be filled.

It is undisputed that the removal of former District Justice of the Peace Getty was proper. See Pa. Constitution, Art. V, Sections 17, 18(d). It is also beyond question that the Constitution permits only one justice of the peace in each magisterial district. After District Justice Getty had been removed, his vacant district was merged with defendant's district in which there was no vacancy. (As noted previously the numbers employed to designate the abolished and merged districts are of no legal significance and cannot affect the substance of what was actually accomplished by the merger of the two districts. See note 1, supra.) Logically and necessarily if a district with a vacancy is merged with a district with a lawfully serving justice of the peace, pursuant to a proper Order of this Court, that incumbent becomes the justice of the peace for the newly created, merged district.

To hold otherwise would create a constitutionally impermissible result. If we were to accept plaintiff's contention that he is, in fact now the district justice of the peace for the merged district, it would necessarily follow that defendant, who was lawfully elected in November, 1969, for a six year term, would, in effect, be removed from his office by the merger. This plainly cannot occur, since defendant, as a duly elected and serving district justice of the peace, can only be removed from office pursuant to Article V, Sections 17 and 18 of the Pennsylvania Constitution.

It must be concluded, therefore, that when former Magisterial District 32-1-10 was merged by this Court's Order, with non-vacant District 32-2-9, defendant be-

came the district justice of the peace for the newly merged district. The vacancy in former District 32-1-10 disappeared when that district itself disappeared by virtue of this Court's approval of the merger. Consequently, there is no existing vacant office to which plaintiff could have been appointed and which he can lawfully claim.[5]

Defendant's Preliminary Objections and Demurrer are sustained, and Plaintiff's Complaint in Quo Warranto is dismissed.

---

[5] Plaintiff argues that the common pleas court has no constitutional or statutory authority to "appoint" any justice of the peace. While technically correct, this contention has no application to the instant facts. Defendant's status as the justice of the peace for the merged district was not obtained by an appointment, but was merely the result of this Court's approval of the merger of defendant's district with a vacant district.

Because of our disposition we need not reach the question of whether plaintiff's appointment to the office of justice of the peace was invalid for lack of advice and consent by the Senate. See Pennsylvania Constitution, Art. V, Section 13(b).