## Additional Law Judge, 53rd Judicial District.

*Declaratory Judgments Act —Practice, C. P. — Pleading—Jurisdiction— Necessary parties—Standing of petitioner—Judicial notice—Act of June 18, 1923—Courts—Judges.*

1. The same precision and formalities should be observed in asking for a declaratory judgment as in the pleadings in any other case.

2. In order for the court to render a declaratory judgment, the court must have jurisdiction of the subject-matter, independent of the Declaratory Judgments Act of June 18, 1923, P. L. 840.

3. The petitioner must be one that would have standing to be a party if the action were in one of the usual forms.

4. The court will not render a declaratory judgment unless all parties that are sought to be bound by it are in court.

5. The Court of Common Pleas has no jurisdiction by declaratory judgment to determine the right of any one to hold the office of judge of the Court of Common Pleas. The remedy is by *quo warranto* in the Supreme Court.

6. The court will take judicial notice of the action of the Governor in appointing a judge of the same court.

The Declaratory Judgments Act discussed and construed.

Rule for declaratory judgment. C. P. Lawrence Co., Dec. T., 1927, Misc. Docket No. 4.

*S. P. Emery,* for petitioner.

*John P. Lockhart,* County Solicitor, for county commissioners.

*William McElwee, Jr.,* for intervening petitioners.

*C. H. Aikens, amicus curiæ,* made argument for petition.

PARKER, P. J., 28th judicial district, specially presiding, Oct. 6, 1927.—On Sept. 7, 1927, there was presented to this court by William E. Marquis a petition asking for a declaratory judgment. On that same date an order was made by the President Judge, directing that the petition be entertained, that Sept. 21, 1927, be fixed as a time for hearing, and that a copy of the petition and order be served on the Attorney-General of the Commonwealth of Pennsylvania and the Commissioners of Lawrence County. At the time fixed for hearing, this matter was referred to William M. Parker, President Judge of the 28th Judicial District, who was specially presiding in this court, and arguments were heard.

Prior to the hearing, the county commissioners presented a petition, asking that the original petition be dismissed for the reason that the petitioner was not entitled to a declaratory judgment. On Sept. 12, 1927, David S. Pyle, Harry K. Gregory and S. E. Irvine, alleging that they were citizens and taxpayers of the 53rd judicial district, asked permission to intervene and file a petition to dismiss the original petition. Various reasons were given in support of their position. The petitioners were permitted to intervene, and a rule to show cause why the petition should not be dismissed was granted, returnable at the time fixed for hearing. Arguments were heard both upon the right of the original petitioner to a declaratory judgment and as to the constitutionality of the statute in question.

The petitions to dismiss present a serious question, and it is, therefore, necessary for us to carefully analyze the petition and consider the reasons in support of the claim that the petition should be dismissed.

The caption of the petition is: "In Re: Additional Law Judge, Fifty-third Judicial District."

William E. Marquis alleges:

"1. That he is a citizen and a taxpayer of the County of Lawrence, State of Pennsylvania, and the Fifty-third Judicial District of said Commonwealth.

"2. That at the 1927 session of the State Legislature there was enacted a statute providing for an additional law judge for said County of Lawrence (53rd District), said statute being No. 9.

"3. That the 2nd section of said act provides that at the next municipal election after the passage of the act, the qualified electors of the Fifty-third Judicial District shall elect in the manner prescribed by law a judge 'to serve as said additional law judge in said district from the first Monday in January, 1922.'

"4. That the status of the petitioner is that of a citizen of said judicial district, and his rights and legal relations, as well as the rights and legal relations of other citizens of said judicial district, are affected by said statute, and uncertainty exists as to the construction and validity of said statute.

"5. That, by virtue of the Declaratory Judgments Act, he is entitled to have the construction and validity of said act determined.

"6. That considerable uncertainty exists and has been expressed by others relative to the legal construction and validity of said statute."

The petition then prays that the court, after hearing, construe said act of assembly, "determine the validity and constitutionality thereof" and enter a declaratory judgment thereon.

We do not know of any reason why the same precision and formalities should not be observed in asking for a declaratory judgment as in the pleadings in any other case. While we have abandoned many of the technicalities inherited from the common law, it is a universal requirement that one presenting a claim must do so with sufficient precision to readily determine the exact point in issue. We do not believe that the ordinary rules have been followed in framing the petition in this case. Parties, an issue and the bringing of prospective litigants before the court are just as essential here as in the old and well-established practice. We will, however, endeavor to dispose of the question, although we are of the opinion that the petition itself is defective.

It will be observed that the petition of Mr. Marquis does not set forth any facts or allegations showing that an actual controversy exists between the petitioner and any other party or parties. It does not allege that the petitioner holds any view or opinion, and he does not make any assertion with relation to the validity or constitutionality of the act. He fails to state whether he contends that it is a valid or invalid, constitutional or unconstitutional, act. He does not name any other person or body of persons who hold any views contrary to his. It is not asserted that any person proposes to do anything pursuant to the act, that the Governor proposes to fill the vacancy, that any one is a candidate for the office, or that the petitioner has any special interest in the office. Although the law provides for municipal elections in odd-numbered years, a primary in September and an election in November, it is not asserted that anything is being done pursuant to the act.

We will first seek such light as we can obtain from the decisions of our own appellate courts. In Kariher's Petition, 284 Pa. 455, an appeal from this judicial district, the Supreme Court considered the constitutionality of the act, and, in doing so, stated the established procedure with reference to declaratory judgments. We believe that that case is controlling here. Mr. Chief Justice Moschzisker, in that case, as a prerequisite for a determination of its constitutionality, examined and gave an authoritative declaration as to the scope of the act. It was settled in that case that when a proper interpretation is given to the Declaratory Judgments Act, there is no denial of due process of law, speaking with reference thereto as follows: "There is no

denial of due process of law. The instant act takes the fundamental conceptions of declaratory judgment procedure as *theretofore established.* The court must have jurisdiction; there must be notice, an opportunity to present one's cause, a proceeding appropriate to the character of the particular case, and an adjudication of the same nature as is present in other cases. Where these things are present, there is due process of law: Hagar v. Reclamation District, 111 U. S. 701, 708. The 14th Amendment to the Federal Constitution does not undertake to control the power of the state to determine by what process legal rights may be asserted or legal obligations enforced, or what form procedure and practice shall take, so long as the above elements are present: Iowa Central Ry. Co. v. Iowa, 160 U. S. 389, 393; Louisville & Nashville R. R. Co. v. Schmidt, 177 U. S. 230, 236. In determining whether the essential elements exist, the substance of matter, and not their mere form, is the governing thing: Simon v. Craft, 182 U. S. 427, 436, 437."

With reference to this same subject, on page 471 of the same opinion, it was said: "Before closing our consideration of the branch of the case now under discussion, it may be well to state that, in all jurisdictions where declaratory judgment practice obtains, the rule is established that it is a matter of judicial discretion whether or not jurisdiction will be taken of any particular case (Dyson v. Attorney-General (1911), 1 K. B. 410, 417; Braman v. Babcock, 98 Conn. 549; 120 Atl. Repr. 150; section 6 of the act); that a proceeding to obtain such a judgment will not be entertained where the court lacks jurisdiction of the subject-matter involved (British South Africa Co. v. Companhia de Mocambigue (1892), 2 Q. B. 358), or where another statutory remedy has been specially provided for the character of case in hand (Barraclough v. Brown (1897), — A. C. 615; Bull v. Attorney-General (1916), 2 A. C. 564); and that jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exists between parties, all of whom are *sui juris* and before the court, and that the declaration sought will be a practical help in ending the controversy: Lewis v. Green (1905), 2 Ch. 340; State v. Board of Commissioners, 117 Kan. 151; 230 Pac. Repr. 531; Axton v. Goodman, 265 S. W. Repr. (Ky.), 806; Ezzell v. Exall, 269 S. W. Repr. (Ky.), 752. Moreover, in a declaratory judgment proceeding the court will not decide future rights in anticipation of an event which may not happen, but, just as in the ordinary executory action, it will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision, as, for instance, where present rights depend on the declaration sought by plaintiff; and even then such rights will not be determined unless all parties concerned in their adjudication are present and ready to proceed with the case (see section 11 of the act), so that the judgment rendered will make the issues involved *res judicata* in the full sense of that term: In re Staples (1916), 1 Ch. 322; Norton v. Moren, 267 S. W. Repr. (Ky.), 171; Ackerman v. Union and New Haven Trust Co., 91 Conn. 500; 100 Atl. Repr. 22."

The specific statement that jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exist between parties, all of whom are *sui juris* and before the court, and that the declaration sought will be a practical help in ending the controversy, is well established in all jurisdictions. These declarations as made, we believe, are sufficient for a full determination of the case, but we are here called upon to declare an act of the legislature unconstitutional, and additional light may be obtained from examination of the same authorities referred to by the Chief Justice and which are specially applicable to a situ-

ation where a court is asked to declare an act of the legislature unconstitutional.

In Muskrat v. United States, 219 U. S. 346, Mr. Justice Day said:

"What, then, does the Constitution mean in conferring this judicial power with the right to determine 'cases' and 'controversies.' A 'case' was defined by Mr. Chief Justice Marshall, as early as the leading case of Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, to be a suit instituted according to the regular course of judicial procedure. And what more, if anything, is meant in the use of the term 'controversy?' That question was dealt with by Mr. Justice Field at the circuit in the case of Re Pacific R. Commission, 32 Fed. 241, 255. Of these terms, that learned Justice said:

" 'The judicial article of the Constitution mentions cases and controversies. The term 'controversies,' if distinguishable at all from 'cases,' is so in that it is less comprehensive than the latter, and includes only suits of a civil nature: Chisholm v. Georgia, 2 Dall. 431, 432, 1 L. Ed. 445, 446, 1 Tucker's Bl. Com. App. 420, 421. By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights or the prevention, redress or punishment of wrongs. Whenever the claim of a party under the Constitution, laws or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication.'

"The power being thus limited to require an application of the judicial power to cases and controversies, is the act which undertook to authorize the present suits to determine the constitutional validity of certain legislation within the constitutional authority of the court? This inquiry in the case before us includes the broader question, when may this court, in the exercise of the judicial power, pass upon the constitutional validity of an Act of Congress? That question has been settled from the early history of the court, the leading case on the subject being Marbury v. Madison, supra.

"In that case, Chief Justice Marshall, who spoke for the court, was careful to point out that the right to declare an Act of Congress unconstitutional could only be exercised when a proper case between opposing parties was submitted for judicial determination; that there was no general veto power in the court upon the legislation of Congress; and that the authority to declare an act unconstitutional sprang from the requirement that the court, in administering the law and pronouncing judgment between the parties to a case and choosing between the requirements of the fundamental law established by the people and embodied in the Constitution and an act of the agents of the people, acting under authority of the Constitution, should enforce the Constitution as the supreme law of the land. The Chief Justice demonstrated, in a manner which has been regarded as settling the question, that with the choice thus given between a constitutional requirement and a conflicting statutory enactment, the plain duty of the court was to follow and enforce the Constitution as the supreme law established by the people. And the court recognized, in Marbury v. Madison and subsequent cases, that the exercise of this great power could only be invoked in cases which came regularly before the courts for determination, for, said the Chief Justice, in Osborn v. Bank of United States, 9 Wheat. 819, 6 L. Ed. 223, speaking of the third article of the Constitution, conferring judicial power:

" 'This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States when

any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States.'"

In Chicago and G. T. R. v. Wellman, 143 U. S. 339, Mr. Justice Brewer said: "Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, state or Federal, and a decision necessary rests on the competency of the legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not; but such an exercise of power is the ultimate and supreme function of courts. It is legitimate only in the last resort, and as a necessity in the determination of *real, honest* and *vital controversy between individuals.* It never was the thought that, by means of a friendly suit, a party beaten in the legislature could transfer to the courts and inquire as to the constitutionality of the legislative act."

In the case of Muskrat v. United States, *supra,* Mr. Justice Day, writing the opinion for the court, refused to entertain an appeal to construe an Act of Congress, saying with reference thereto as follows: "The exercise of this, the most important and delicate duty of this court, is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the Government. This attempt to obtain a judicial declaration of the validity of the Act of Congress is not presented in a 'case' or 'controversy' to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the Government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties when actual litigation brings to the court the question of the constitutionality of such legislation."

In Self-Insurer's Ass'n v. State Industrial Commission, 224 N. Y. 13; 119 N. E. Repr. 1027, there was presented the question of the construction of a provision to the effect that the Industrial Commission may, in its discretion, certify to the Appellate Division of the Supreme Court questions of law involved in its decision. The commission, differing on a question as to its powers, although not in connection with any pending question, certified the question to the appellate court. Certain of the remarks of Justice Cardozo in the opinion in that case are pertinent: "Nothing in these provisions sustains the practice followed. The commission made no decision. There was no case or controversy before it. No summons to attend a hearing had been given to the insurance carriers. No carrier had appeared. The members of the commission, debating their powers among themselves, asked and obtained the advisory opinion of a court. Without notice to the carriers to be affected

by their action, they fortified themselves in advance by judicial instruction. In such circumstances, the answer of the Appellate Division bound no one and settled nothing. We do not know that the commission will ever adopt the proposed resolution. If it does and so notifies the carriers, the legality of its action will remain open for contest in the courts. No advice that may now be given in response to a request for light and guidance can prejudge the issue or control the outcome."

In the instant case, while there are not any facts before the court to support it, by way of argument, let us assume that nominations were made at the primary held in September, and that, as a result of that primary, persons have received nominations and are entitled to have their names printed on the ballots for the coming November election, no one would have the temerity to suggest that they would be bound by a decision in this case; or, in other words, that a declaration in this action would be *res judicata* as to one claiming a right to have his name printed upon the official ballot or a stranger and citizen who objected. If some one is elected to the office in November, he likewise would have certain vested rights that could not be taken away from him. It is easy to conceive of a number of situations in which a decision in this case would not be binding upon other parties who have a real interest in the controversy, but as certain of the parties would necessarily go into other courts for a determination of their rights, a decision here would not even be valuable on the principle of *stare decisis*. If one is elected to the office and receives his commission from the Governor, under our Constitution, the proceeding to oust him would be by a writ of *quo warranto* at the instance of the Attorney-General before the Supreme Court. In the present case no one is asserting a property right against another person. The question does not arise in the determination of a real, honest or vital controversy between individuals.

In substance, the question presented to us for determination runs something like this: "I, William E. Marquis, am uncertain as to the meaning, validity and constitutionality of an act of assembly. I have heard doubts expressed by other persons. I, therefore, now ask the opinion of the court upon that question."

Giving to the petition its fullest significance, it amounts to nothing more than an advisory opinion, and does not arise in a controversy between individuals. When we further consider that the petitioner does not even aver that he believes the act to be unconstitutional, or that any other person has differed with him, we can look upon it as nothing else than a request for an advisory opinion.

In a proceeding of this kind, we do not see how we can close our eyes to a fact known to every one in this judicial district, that nominations have been made for the office, and yet no such persons are made parties to this action. If there is any fact in controversy, it could not be said that such a nominee has not such an interest as would entitle him to be made a party. If we treat this as a mere assumption for the sake of argument, and then consider that if there is not any one claiming the office, and no one is going to claim the office, there cannot possibly be a controversy. As noted above, our Supreme Court has said that jurisdiction will never be assumed unless a controversy exists between parties, all of whom are *sui juris* and before the court.

Again, referring to the decision of the Supreme Court in Kariher's Petition, it clearly appears that no good purpose would be served by a declaratory judgment under the circumstances. It is provided by the 6th section of the Uniform Declaratory Judgments Act that the court may refuse to render

and enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. We have but to refer to the facts to show that not only would a decision as between the parties here serve no good purpose, but would do harm. An opinion would be rendered of no binding effect upon the candidates for office, uncertainty would be thrown into the election and a positive injury done. In all jurisdictions, as stated by the Chief Justice, where declaratory judgment practice obtains, the rule is established that it is a matter of judicial discretion whether or not jurisdiction will be taken of any particular case. We are satisfied that this is a case where it is clearly the duty of the court to refuse to entertain the petition.

The petitioner fails to show that he has any substantial interest in the controversy, if one does exist. The first paragraph of the petition alleges that he is a citizen and taxpayer of the County of Lawrence, State of Pennsylvania, and the 53rd judicial district. Taken by itself, there might be some doubt as to whether the petitioner intended to say that he was a taxpayer, both of the county and the State; but in the fourth paragraph he clears the question by stating that his status is that of a citizen of said judicial district, and his rights and legal relations, as well as the rights and legal relations of other citizens of said judicial district, are affected by the said statute. Now, salaries of judges are paid by the State and not the county, and it certainly would be extending the meaning of the word "substantial" to say that, under the terms of this petition, Mr. Marquis has a substantial interest in the matter in controversy.

After we had written the foregoing part of this opinion, it came to our attention that the Governor, pursuant to the Act of 1927, had appointed Hon. James A. Chambers to fill the position of judge until the second Monday in January next, and that Judge Chambers had received his commission and taken the oath of office. We believe there is little doubt about our duty to take judicial notice of this fact. This furnishes a strong and conclusive reason of itself why the petition should be dismissed. By virtue of article v, section 3, of our Constitution, and the Act of June 14, 1836, P. L. 621, the Supreme Court is given jurisdiction to issue the writ of *quo warranto* in a case of this kind: Com. *v.* Dumbauld, 97 Pa. 293. The case of List's Estate, 283 Pa. 255, is authority for the proposition that the Uniform Declaratory Judgments Act was not intended for, and should not be invoked in, cases where the judgment sought can be had as expeditiously in the ordinary course of legal procedure as it can under the statute.

We are of the opinion that the petition should be dismissed for the following reasons:

It does not appear that there is an actual controversy, or the ripening seeds of one; it does not appear that all parties having an interest in the outcome of this suit are before the court; the declaration sought would not be of practical help in ending the controversy; a statutory remedy exists for the determination of the rights of the parties, if any such controversy does exist between them, and it would be an abuse of judicial discretion to entertain the petition in this case.

And now, Oct. 6, 1927, the petition of William E. Marquis at the above term and number, asking for a declaratory judgment, is dismissed for the reasons given in the foregoing opinion.