Commonwealth ex rel. Margiotti *v.* Sutton et al.

Argued June 7, 1937. Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Warwick Potter Scott* and *George Wharton Pepper,* with them *Hubert J. Horan, Jr., Morris Wolf* and *Robert T. McCracken,* for plaintiff.

*Walter Biddle Saul* and *Albert Smith Faught,* for defendants.

*Edward Friedman,* with him *John Y. Scott,* Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General, for Commonwealth.

OPINION BY MR. JUSTICE LINN, July 7, 1937:

The question[1] is whether the Act establishing the Family Court is in conflict with the Constitution. Respondents have been commissioned judges of that court. In considering the case we apply the familiar rule that legislation is presumed constitutional until the contrary clearly appears.[2] The Act was approved April 28, 1937, P. L. 460, and is entitled: "AN ACT Creating a court of record for the County of Philadelphia to be known as the Family Court; conferring, defining, prescribing and regulating the jurisdiction and powers of said court and of the judges thereof and prescribing the procedure therein; providing for the appointment, election and salaries of the judges of said court, and for the appointment of the officers, clerks and employees thereof; providing for the costs and expenses thereof; providing for the transfer to said court of the jurisdiction in certain proceedings now vested in the orphans' court, the municipal court of Philadelphia and other courts, and for the transfer of certain actions pending in said courts; and repealing existing laws."

We may say at the outset that if, as respondents contend, the primary purpose of the legislature was to provide for what is commonly known as Juvenile Court

---

[1] Original jurisdiction was taken pursuant to Article V, section 3, of the Constitution, *Com. v. Glass,* 295 Pa. 291, 145 A. 278.

[2] See *Tranter v. Allegheny County Authority,* 316 Pa. 65, 75, 173 A. 289.

business, our cases show that there is no constitutional objection to the creation of a Juvenile Court.[3] The nature of such proceedings was considered in *Commonwealth v. Fisher*,[4] 213 Pa. 48, 62 A. 198 (1905), in sustaining the Act of April 23, 1903, P. L. 274, 11 PS section 71 et seq., defining the powers of the Quarter Sessions with reference to the care, treatment and control of dependent, neglected, incorrigible and delinquent children[5] under the age of 16 years. While no new court was created by that Act, it is now settled that the Constitution does not prohibit the creation of a court to deal with the subject. But the power to create a Juvenile Court is not involved in the record before us; the question is not whether the legislature may create such a court, but whether, in attempting to confer such jurisdiction and power on the Family Court together with certain powers on the judges thereof, so much more was added to what the legislature would have been competent to enact for that limited purpose that, by these additions, the Act now conflicts with the Constitution. Anyone studying the subject will find in the Philadelphia Bar Association library a draft of a Standard Juvenile Court Law prepared and published by the Committee on Standard Juvenile Court Laws of the National Probation Association in 1933. A comparison of that draft with the Family Court Act shows that in all probability it was before the draftsman of the Family Court Act, and that, while he found some provisions acceptable, he rejected many and added others not immediately related to the subject and not contained in the Standard draft. It was of course within the province of the

---

[3] Compare *Gottschall v. Campbell*, 234 Pa. 347, 83 A. 286; *Gerlach v. Moore*, 243 Pa. 603, 90 A. 399.

[4] See also *Cinque v. Boyd*, 99 Conn. 70, 121 A. 678 (1923).

[5] For a large collection of Pennsylvania statutes dealing with various phases of the subject, see the Report to the General Assembly Meeting in 1925 of the Commission Appointed to Study and Revise the Statutes of Pennsylvania Relating to Children.

legislature to reject the proposed Standard Act in whole or in part and to make such additions as it considered proper, subject only to constitutional limitations.

The fifth article of the Constitution and certain sections of the Schedule in the eighteenth article deal particularly with courts and judges. Section 1 provides[6]: "The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish."

It may be noted, in passing, that pursuant to the power so conferred to establish other courts, the County Court of Allegheny County and the Municipal Court of Philadelphia were created, and that it was held, as section 6 of the fifth article had separately classified Allegheny County and Philadelphia County, not only with regard to each other but with regard to the remaining counties of the state, the Acts creating those courts were general and not special legislation; that they were not of the same class or grade, and that the validity of separate provisions of the Acts creating either court could thereafter be considered if and when challenged. See *Gottschall v. Campbell*, 234 Pa. 347, 83 A. 286; *Gerlach v. Moore*, 243 Pa. 603, 90 A. 399. Those cases only dealt with the Acts in the form then presented and confined review within the scope of the orders complained of on appeal; the constitutional validity of any supplement or amendment made afterwards was of course not adjudicated.

Absolute power to create other courts was withheld from the legislature; the power granted was to be exercised subject to limitations imposed; if the conditions were not observed, the legislation might be invalid. It is now the duty of this court to determine whether the leg-

---

[6] In this connection reference may be made to Section 11 of Article XVIII (Schedule 1).

islation complies with the conditions. Some of them, important in this case, appear in section 26 of the fifth article which provides: "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgments of such courts, shall be uniform; and the General Assembly is hereby prohibited from creating other courts to exercise the powers vested by this Constitution in the judges of the courts of common pleas and orphans' courts." The words "class or grade" are used as meaning the same thing and are to be given their ordinary and not a technical meaning.

On behalf of the Relator it is contended that the Act creating the Family Court is in conflict with section 26; the contention is that not only has the legislature done what it was not authorized to do, but that it has done what it was prohibited from doing. The argument is that the Family Court is "of the same class or grade" as the courts of common pleas, but that required uniformity is lacking; for example, the Family Court has four judges whereas the Constitution limits a court of common pleas in Philadelphia to three judges: *Com. v. Hyneman*, 242 Pa. 244, 88 A. 1015. Comparison must determine whether, in the light of its organization, jurisdiction and powers, and of the effect of the process and judgments of the Family Court and the judges thereof, it is in the same class or grade as the common pleas, as is contended.

Section 4 of the fifth article provides that "Until otherwise directed by law, the courts of common pleas shall continue as at present established [1873-74], except as herein changed; . . ."[7] Section 6 dealt with

---

[7] In Article 18, Schedule No. 1, provision was made for the continuity of the judicial system existing in 1873 as affected by the Constitution and for the transfer of cases and pending proceedings: see sections 10 to 23.

the common pleas for Philadelphia and Allegheny Counties; section 8 provides that "The said courts in the counties of Philadelphia and Allegheny, respectively, shall, from time to time, in turn detail one or more of their judges [i. e., a common pleas court judge] to hold the courts of oyer and terminer and the courts of quarter sessions of the peace of said counties, in such manner as may be directed by law." Section 9 provides for the rest of the state: "Judges of the courts of common pleas learned in the law shall be judges of the courts of oyer and terminer, quarter sessions of the peace and general jail delivery, and of the orphans' court, and within their respective districts shall be justices of the peace as to criminal matters." Section 10 confers additional powers on the judges: "The judges of the courts of common pleas, within their respective counties, shall have power to issue writs of certiorari to justices of the peace and other inferior courts not of record, and to cause their proceedings to be brought before them, and right and justice to be done."

Section 15 provides: "All judges required to be learned in the law, except the judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are to preside, and shall hold their offices for the period of ten years, if they shall so long behave themselves well; but for any reasonable cause, which shall not be sufficient ground for impeachment, the Governor may remove any of them on the address of two-thirds of each House of the General Assembly."

Strongly indicative of the legislative view that the Family Court and the common pleas in Philadelphia were intended to be of the same class or grade is the measure of compensation to be earned by the Family Court judges; the Act provides that they "shall receive an annual salary of fourteen thousand dollars ($14,000) payable by the Commonwealth," the same as that paid to the judges of the common pleas.

Section 3 contains a provision that "The Family Court shall have all the powers of a court of record possessed by the courts of common pleas and quarter sessions of the peace." The powers of both courts as courts of record[8] are the same. Reference is made, in the brief of respondents, to "the corresponding clause of the Municipal Court Act" perhaps to minimize the comparative effect of this section. Section 16 of the Municipal Court Act (1913, P. L. 711, 718, 17 PS section 699) is more limited by its text: "The said municipal court shall have full power to make rules regulating the practice and procedure therein and the keeping of its records, and, subject to the provisions of this act, shall have all the powers of a court of record possessed by the courts of common pleas and of quarter sessions of the peace and oyer and terminer in the county of Philadelphia."

Apart from the significance of the provision, standing by itself, quoted from section 3, on the class or grade of court contemplated by the legislature, the succeeding provisions of the section, considered with what has already been referred to, and with the oyer and terminer jurisdiction to be referred to later, leave no doubt on the subject. The section continues—"Any judge or judges of the Family Court, when called upon by the president judge of any of the courts of common pleas of the first judicial district, but without interference with the proper conduct of the business of the Family Court, shall have power to hear and to determine upon the

---

[8] "A court of record has been defined as a court . . . that is bound to keep a record of its proceedings, and that may fine or imprison; a court whose proceedings are enrolled for a perpetual memorial and testimony, which rolls are called the records of the court, and are of such high and super-eminent authority that their truth is not to be called in question; a judicial, organized tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of the common law; and a court having a seal. Courts may be designated by statute as courts of record. . . ." Section 5, 15 C. J., pp. 720-721.

certification, hereinafter provided for, of pleas, actions, causes, civil or criminal issues, and all issues and other matters in equity in the courts of common pleas, courts of oyer and terminer and general jail delivery, and courts of quarter sessions of the peace for said judicial district so fully and effectually and to dispose thereof in the same manner as may be done by the judges of the courts of common pleas of the said judicial district. Whenever the proper disposition of business requires it, an arrangement can be made with the judge or judges of the said Family Court for such services, and the president judge, or in his absence or disability, any additional law judge of any of the courts of common pleas or [?] said judicial districts, may certify matters or issues to be heard and determined by such judge of the Family Court specially presiding, as aforesaid." The Act qualifies a Family Court judge to sit as a judge of the common pleas; the judges of both courts must possess the same qualifications. Section 3, therefore, qualifying and authorizing the judges to sit in the common pleas and dispose "of pleas, actions, causes, civil or criminal issues, and all issues and other matters in equity in the courts of common pleas, courts of oyer and terminer and general jail delivery, and courts of quarter sessions of the peace for said judicial district, so fully and effectually and to dispose thereof in the same manner as may be done by the judges of the courts of common pleas of the said judicial district", constitutes a legislative declaration that the Family Court is of the same class or grade as the common pleas. Why should a court whose powers as a court of record are the same, whose judges receive the same compensation and must possess the necessary qualifications to take their places in the common pleas for the exercise of any or all of the jurisdiction conferred on that court by both constitution and statute, including criminal jurisdiction to be exercised as common pleas judges, not be regarded as of the same class or grade as the common pleas? To that question

respondents have furnished no answer that this court can consider adequate. That the Family Court has jurisdiction in family relation and juvenile matters, in addition to the powers conferred on the judges in section 3, is not sufficient to exclude it from the same class or grade. The powers conferred in section 3 were not necessary to the exercise of jurisdiction in the family relation or juvenile matters, but they were necessary to bring the standard of the judges to that required for the work of the common pleas. If a family court judge sat in the common pleas he would not be a common pleas judge but he would be a family court judge assigned to hold, and holding, a session of the common pleas. Earlier cases spoke of a court presided over by an outside judge as a "new court for special purposes": MITCHELL, C. J., in *Morgan v. Reel,* 213 Pa. 81, 88, 62 A. 253, quoting AGNEW, J. In his dissenting opinion in the same case, BROWN, J., said, at page 92, "and into the court outside of his district the invited judge takes with him all the powers which he possesses in his own court." In *Commonwealth v. Johnson,* 236 Pa. 412, 416, 84 A. 824, ELKIN, J., said: "When the responding judge reports for duty in the district to which he is assigned, he is clothed with all the powers of a common pleas judge in the court to which he is called. It is so provided in the Act of 1911, but independently of the act, this has been the settled law of the Commonwealth for more than fifty years." Indeed, section 3, supra, speaks of the Family Court judge as "specially presiding," an expression going back to the idea reflected in the words quoted by MITCHELL, C. J., and continued in the manner in which judges still sign orders made when presiding in courts other than that to which they were elected. Compare *Craig v. Hecht,* 263 U. S. 255, 274.

Another answer made on behalf of respondents is that "this clause may never actually be used"; but we must deal with the authority conferred, not with the possibility that the Family Court judges may not exercise it.

We must also reject respondents' argument that the prima facie effect of that provision, in ascertaining the "same class or grade," is nullified by *Morgan v. Reel*, 213 Pa. 81, in which it was held that the legislature could authorize an orphans' court judge to hear equity proceedings in the common pleas; the opinion, among other grounds of decision, called attention to the fact that section 20 of the fifth article, providing for chancery powers in the common pleas, was, in itself, sufficient to sustain the equity feature of the Act.

The Family Court judges are vested with power to sit in the oyer and terminer, a court in which the gravest crimes are triable and for which the punishment may be life imprisonment or death; such jurisdiction is generally conferred only on the highest jury trial court[9] available, and in our system is presided over by a common pleas judge, section 9 of the fifth article providing that "Judges of the courts of common pleas learned in the law shall be judges of the courts of oyer and terminer. . . ."

It is perhaps safe to say that no jurisdictional statute passed since the adoption of the Constitution has proposed such a large and important change in the trial of major criminal offenses as this Act provides for. Section 3 authorizes the judges of the Family Court, on the call of the president judge of any court of common pleas in Philadelphia, to preside in the oyer and terminer as common pleas judges may do. But that is not all. Section 14 provides "Jurisdiction of Family Court. The Family Court shall have exclusive jurisdiction in the following actions and proceedings, except where specifically otherwise provided: . . . (m) Any prosecution of any minor for any criminal offense under the laws of this Commonwealth. The jurisdiction of the courts [?] in such cases shall be exclusive, except that,

---

[9] In early days the Justices of the Supreme Court presided: see *Com. v. Ickhoff*, 33 Pa. 80.

in any such case where the child is over 16 years of age, the court may certify such case to the court of quarter sessions of the peace, or the court of oyer and terminer and general jail delivery, as the case may require."

The next section then takes from the court of oyer and terminer pending cases, to be disposed of by the Family Court. The section is as follows: "Section 15. Transfer of Records and Pending Actions from Other Courts.—All books, records, indices, documents and papers in the possession of the Municipal Court of Philadelphia, Courts of Quarter Sessions of the Peace, or Courts of Oyer and Terminer and General Jail Delivery, and Orphans' Court of Philadelphia County, or the clerks thereof, and all actions and matters pending in said courts shall, on the date when this act becomes effective, be transferred to the court created by this act to the extent that such actions and matters and the books, records, indices, documents and all papers connected therewith are within the jurisdiction of the Family Court as herein established.

"The Family Court is hereby authorized to hear, determine and to dispose of the actions and matters so transferred from the Municipal Court of Philadelphia, Courts of Quarter Sessions of the Peace, Court of Oyer and Terminer and General Jail Delivery, and Orphans' Court, and shall have full power and authority to enforce any and all orders, decrees, judgments or sentences heretofore entered or imposed in any actions or matters transferred from said courts, with the same force and effect as if such actions had been originally instituted in the Family Court."

The importance of the change and the magnitude of the task imposed will be appreciated by those who are familiar with the statistics showing the relatively large proportion of persons between the ages of 16 and 21 indicted for major offenses. With the wisdom of the change this court is of course not concerned; that is a matter for the legislature; its authority over the power

constitutionally vested in the common pleas judges to preside in the oyer and terminer need not be defined in this case. The subject is referred to however as showing its importance in determining whether the court on which such power was conferred is of the same class or grade as the common pleas as has already been stated.

Respondents' parallel column exhibit showing the jurisdiction of the County Court of Allegheny County and of the Municipal Court is not persuasive; as has been said, the fact that a court of the same class or grade as the common pleas was also authorized to administer to the welfare of children is not enough to avoid the application of the conditions imposed by the Constitution and otherwise applicable. If that were all that were required to escape the requirement of uniformity, the conditions would be easily evaded.

In the circumstances all the members of this court agree that the Family Court Act provides for a court and for judges of the same class or grade as the common pleas, notwithstanding the attempt to add the additional jurisdiction given. As the Constitution limits the common pleas of Philadelphia to three judges and as the Family Court Act provides for a court of the same class or grade but with four judges, the Act is in conflict with section 26 of the fifth article requiring that such courts "so far as regulated by law, and the force and effect of the process and judgments of such courts, shall be uniform."

While under the severability section of the Act, some provisions repugnant to the Constitution might be stricken out by this court, it is not possible, even by doing that, to construe the Act so that the Family Court will be uniform with the common pleas in the required respects; severability provisions must be given reasonable construction: *Mazurek v. F. M. Ins. Co.*, 320 Pa. 33, 38, 181 A. 570. It is therefore unnecessary to discuss constitutional objections that might be urged against particular provisions of the Act.

Judgment is entered in favor of the Commonwealth; respondents, Isaac C. Sutton, Joseph Moss, Michael A. Spatola and Felix Piekarski, are ousted as judges of the Family Court, offices which they claim to hold. Respondents shall pay the costs.

CONCURRING OPINION BY MR. JUSTICE BARNES:

The conclusion is inescapable that the Act of April 28, 1937, P. L. 460, creating a court of record to be known as the Family Court, is unconstitutional. I concur in the opinion of this Court invalidating the Act, not only because it is faulty and defective as drawn, but for the further reason that it disregards clearly expressed limitations upon legislative power contained in the Judiciary Article of the Constitution. I am convinced, after careful study of its provisions, that, if it were attempted to put the Act in force, such uncertainty and confusion would result as to become destructive of the orderly administration of justice.

When it created the Family Court, the legislature undoubtedly intended to establish a model juvenile court for Philadelphia County. This intention clearly appears from the title, and the statement of the "purposes and basic principles" as set forth in Section 1* of the Act. These worthy purposes might have been realized in a constitutional manner had the act included only such provisions as would have been appropriate to the principles so expressed. Apparently the object in view was to create a court of family relations based upon the "standard juvenile court law," which is published by the

---

\* "Purposes and Basic Principles: The basic purpose and principle of this Act is to secure uniform administration in one court of matters pertaining to family relations, and to secure for each child under its jurisdiction such guidance, care, custody, and control, preferably in his own home, or by placement as will serve the home or the child's welfare and the best interests of the Commonwealth."

Committee on Standard Juvenile Court laws of the National Probation Association. It would seem that provisions of that standard form were not acceptable to the draftsman of the present Act, and, rejecting these, he substituted others unrelated to juvenile delinquency. This departure was an unfortunate one, and has resulted in the attempt to create an anomalous court with powers foreign to those possessed by juvenile courts in other jurisdictions. A model juvenile court for Philadelphia is both desirable and necessary and, if it were possible, under the Severability Clause of the Act, to salvage from the legislation before us the valid provisions relating to such a Family Court, I feel sure this Court would strive to accomplish that result.

But the offending provisions of the Act are so integrated with the general statutory scheme, that they cannot be severed without destroying the unity of the legislative purpose. Hence the entire Act must fall, as the valid provisions are dependent to such an extent upon those which are unconstitutional that, notwithstanding the severability clause, this Court cannot presume that the legislature intended them to stand alone: *Rothermel v. Meyerle,* 136 Pa. 250; *Booth & Flinn v. Miller,* 237 Pa. 297; *Bagley Co. v. Cameron,* 282 Pa. 84; *Com. ex rel. v. Humphrey,* 228 Pa. 280; *Mazurek v. Farmers' Mutual Fire Ins. Co. of Jamestown,* 320 Pa. 33.

The basic error that was made, to which many others are related, lies in the fact that the legislature, by conferring powers upon the Family Court not generally possessed by courts of that character, has constituted a court of the same class or grade as the courts of common pleas. Accordingly, for reasons more fully discussed in the opinion of Mr. Justice LINN, speaking for this Court, it has failed to establish a court within the limitations imposed by Article V Section 26 of the Constitution because the organization, jurisdiction and powers so conferred upon the Family Court are not uniform with those possessed by Courts of Common Pleas.

It is not my purpose to consider constitutional provisions dealing with the creation of courts of the Commonwealth. I confine this expression of my views, which made imperative my concurrence in the decree invalidating this legislation, to directing attention to several sections of the Act which are in contravention of the Constitution. This is done with the earnest thought that if, at some future time, the General Assembly, in its discretion, shall see fit to exercise the unquestioned powers which it possesses to create "other courts" such, for example, as a family court, it may be helpful to point out at this time certain provisions which proved fatal to the present Act, or which might be deemed questionable in conferring jurisdiction and powers upon such new courts. I refer now to the following objections to the present Act:

The greatest departure, in my opinion, made by this statute from earlier acts of assembly creating courts not enumerated in the Constitution, arises from the attempt to confer an almost exclusive criminal jurisdiction upon the Family Court, in all cases where the accused is a minor. In Section 14(m) of the Act, it is provided that in the prosecution of a minor for "any criminal offense under the laws of this Commonwealth" exclusive jurisdiction shall be in the Family Court, but that if the offender is over sixteen but less than twenty-one years of age, the Family Court "may certify such case" to the Quarter Sessions or the Oyer and Terminer courts, as the case may require. The right to certify is discretionary with the Family Court, and it cannot be compelled to certify if it does not elect to do so. Nowhere in the Act is "criminal offense" defined, hence it necessarily includes murder and other high felonies committed by minors, triable only in the Court of Oyer and Terminer, or before one of the Justices of the Supreme Court sitting as a judge of the Court of Oyer and Terminer, in which tribunals this jurisdiction was exclusively vested by law at the time our Constitution was

adopted. It cannot be doubted that adequate protection of the fundamental rights of the accused requires that he shall not be deprived of life, nor sentenced to imprisonment for a term of years, save by a court of the highest grade among courts of first instance. This attempt to transfer exclusive jurisdiction, over such felonies as may be committed by minors, from the Court of Oyer and Terminer to an inferior tribunal constitutes an invasion of rights protected by the Constitution. If this exclusive jurisdiction be denied the Family Court, as unquestionably it must be because it would be contrary to our organic law, the effect then is to subject minors to the subversive influences of the criminal courts, the very evil against which the juvenile court is intended to protect. Therefore, to cure this jurisdictional flaw, it would become necessary to rewrite this subsection, the power to do which rests alone with the legislature. It must be held to be in contravention of the Constitution.

The provisions of Section 14(b) of the act give rise to serious objections. Therein *exclusive* jurisdiction is given to the Family Court of "all actions and proceedings concerning, or trials of persons, including adults," contributing to the delinquency, neglect, or dependency of any child under 16 years of age, or charged with any offense with respect to such child. Whatever the meaning of the term "actions and proceedings" may be in that context it is evident from the language used that the jurisdiction over such subject matters now belongs in the Court of Quarter Sessions, which exercises it concurrently with the Municipal Court. The provisions in question go further than the powers granted to the County Court of Allegheny (Act of May 5, 1911, P. L. 198) or to the Municipal Court of Philadelphia. (Act of July 12, 1913, P. L. 711.) It entirely deprives the Quarter Sessions Court, as a court ordained by the Constitution, of part of its jurisdiction. In the past it was doubtful whether the legislature could deprive a constitutional court *of any part* of its jurisdiction, and confer

it upon other courts established from time to time. We resolved that question in favor of the power of the legislature to create courts of a different class from those enumerated in the judiciary article, and to grant them *a limited or concurrent* jurisdiction with constitutional courts: *Gerlach v. Moore,* 243 Pa. 603, 609. But such an infringement as now proposed under the provisions of this subsection cannot survive the test of constitutionality.

A serious ambiguity that might easily have been avoided is found in Section 14(e). This subsection gives the Family Court exclusive jurisdiction in "all actions and proceedings brought against any husband or father, wherein it is charged that he has without reasonable cause separated himself from his wife or children. . . ." The section is primarily concerned with actions for support, but the language employed is so broad and inclusive as to confer upon the Family Court exclusive jurisdiction in all actions for separation, even though the action be one of divorce upon the ground of desertion. Divorce proceedings have long been embraced within the jurisdiction of the common pleas courts of this Commonwealth. Desertion is but one of the grounds upon which an action for divorce may be based. To separate this jurisdiction so that one cause of action for divorce shall be brought in the Family Court, and others in Common Pleas court, is a classification that cannot be sustained as constitutional. This Court is without power to supply the words required to indicate that this section *has no application* to actions for divorce because of desertion.

An objection that may be raised against the validity of Section 14 (j) is whether the *exclusive powers* there conferred upon the Family Court conflict with the jurisdiction of the Orphans' Court, concerning the inheritance rights of children born out of wedlock. At least the language used in this subsection causes doubt whether the Family Court can acquire exclusive juris-

diction of this subject, for the same reasons as stated with respect to the Court of Oyer and Terminer.

It is attempted by Section 19 of the Act to confer jurisdiction on the court if service of orders or process is effected by registered mail. It says: ". . . service by registered mail with a return receipt requested, addressed to the last known address, or by publication thereof, or by both . . ." may be made in any action and proceeding in the court if the judge is satisfied that personal service cannot be made. No distinction is drawn between service of such nature upon resident or nonresident parties. The section further continues: "If any person so served with an order or process shall fail to appear he may be proceeded against for contempt of court." That this provision is without precedent in the law, and, if sustained, would lead to the denial of rights guaranteed by the Constitution, needs no discussion.

It is provided in Section 20 as follows: "In addition to the methods and procedures provided by existing law, proceedings in said court may be initiated before any judge of said court *upon information,* verified under oath by any person, or upon the court's own motion." The express prohibition of Article I, Section 10, of the Constitution against proceedings in criminal cases by information reads as follows: "No person shall, for any indictable offense, be proceeded against criminally *by information,* except in cases in the land or naval forces, or in the militia, when in actual service, in time of war or public danger. . . ." This results in the impairment by the present Act of a fundamental right of the citizen.

Section 7 reads in part: "In the hearing *of any case* the general public may be excluded." While a trial judge unquestionably has the power in proper cases, where public morals so require, and the rights of the accused are not harmed, to exclude the general public from the trial room, the blanket authority sought to be con-

ferred upon the Family Court by this Section violates the guarantee of "a speedy public trial," contained in Section 9 of the Bill of Rights of the Constitution.

Under Section 11 there is a provision for the appointment of "referees" to whom the "hearing *of any case may be referred*." While judicial functions may not be delegated, the legislature may undoubtedly empower courts of record to refer certain of its proceedings to masters, referees or auditors, if provision is made so that fundamental rights of the accused or of the parties are not infringed. The Act here in question has not provided the required protection. The circumstances under which the reference shall be made, the extent of the judicial review thereof, the class of offenses that may be referred, are undefined. Nor is it necessary that the referee be learned in the law. As the offenses so referred may include felonies and other crimes properly triable before a jury, the unconstitutionality of the "reference" authorized by this section is manifest. A desire to create a model family court, no matter how laudable, cannot justify the denial to the accused of a trial by jury. The objectionable features of this Section are not entirely cured by the "jury trial" provided for by Section 24, and the right to appeal to the court en banc granted by Section 26 of the present Act.

Additional questions might be raised with respect to the provisions of the Act, if the limits of this discussion would permit. It is inevitable that, with an Act so faultily drawn as the present one, confusion would follow while doubtful provisions are before the courts for construction. Of one thing, however, we may be certain,—that while all such litigation is pending, and while controversial questions in connection with the Act are being settled, the guarantees of Article I, Section 11, of the Constitution would become imperiled by the denial and delay of justice that must necessarily follow.

For the reasons stated, I concur in the opinion of the Court.